Edwin O. Adamson, Appellee, v. A. E. McKeon, Appellant.

No. 39051.

May 14, 1929.

Rehearing Denied September 21, 1929.

*Miller, Kelly, Shuttleworth & McManus* and *W. E. S. Hutcheon,* for appellant.

*Howard & Sayers* and *Wilson & Harris,* for appellee.

MORLING, J.—For convenience, plaintiff and his assignors will be denominated "plaintiffs." We disregard, as immaterial to the points under discussion, the alleged element of the agreement by which a $10 shortage on the basis of the alleged computation was to be borne by the five equally.

I. Defendant's first proposition is that the contract alleged was between the makers of a promissory note to be bound thereon *inter se* in a proportion different from that equal liability implied by law, and, being oral, is not provable, under the promise to answer for the debt of another clause of the statute of frauds.

Plaintiffs' evidence is to the effect that the bank was in need of a larger reserve, and, in order to get the desired increase, defendant asked the plaintiffs to sign a note for $10,000 to a correspondent bank; that there was discussion as to whether, in signing the note, they should assume per capita responsibility, and that plaintiffs refused to sign on that basis; that it was finally agreed verbally that they should all sign; that their several responsibilities, as between themselves, should be in pro-

portion to their respective stock holdings; and that defendant's share should be twenty-five thirty-sevenths plus $2.00. It is the claim of the plaintiffs also that, at each renewal of the note, this same verbal agreement was expressly renewed.

If we assume the truth of plaintiffs' contention, the agreement in its ultimate effect was that each of these five officials should contribute his credit, in order to procure the additional reserve, and that their respective contributions of credit, as between themselves, should be in proportion to their respective stock holdings. In its equivalent, defendant agreed to sign the note in order to get his contribution of twenty-five thirty-sevenths of the $10,000, and as between him and plaintiffs, agreed to be responsible for that amount of the sum borrowed. At the time the agreement was first made, none of the parties was indebted for any part of the $10,000. There was no debt—no principal debtor. A debt was to be incurred, but as to defendant's share in controversy, it was to be his debt. As to that, it was defendant who was to be the principal; the plaintiffs, the sureties. The parties, plaintiffs and defendant, were stockholders in a bank, and the subject-matter of the contract was the borrowing of $10,000 for the benefit of their common enterprise, each in proportion to his interest. Defendant's agreement was to answer for his own proportion—for his own debt—as thus fixed; not, in so far as concerns that proportion, to answer for the debt, default, or miscarriage of another. It is not here, on plaintiffs' claim, sought to hold defendant for the plaintiffs' proportion of the debt. The promise of each maker to the others was, as to the matter here involved, original, and to pay his own debt. It was not collateral, or to pay another's debt. The statute of frauds has no application. *Wilson v. Smith,* 73 Iowa 429; *Mills v. Brown,* 11 Iowa 314; *Townsend v. White,* 102 Iowa 477; *W. T. Madden Co. v. F. Becker Asphaltum Roof. Co.,* 205 Iowa 783; *Richmann v. Beach,* 201 Iowa 1167; 27 Corpus Juris 130 *et seq.*

II. The court instructed the jury that, in order to recover more than one fifth of the amount paid by plaintiffs, it was incumbent upon plaintiffs to establish that, when the original note  was given, on March 11, 1925, and also at the time of the execution of the last renewal, that of March 11, 1926, it was mutually agreed between all the signers that they should be liable in pro-

portion to their stock holdings, and that defendant's liability was to be for twenty-five thirty-sevenths. Defendant urges that there is no evidence that such an agreement was made with respect to the last renewal. Plaintiffs offered evidence to the effect that, when the first note was signed, the makers, including defendant, agreed to be severally responsible for one thirty-seventh for each share of stock held by them respectively, and that a written contract should be prepared and executed accordingly; that, soon afterward, a written contract was prepared, but defendant refused to sign it. Some of the witnesses say that the reason given by defendant for refusing to sign was that he did not want such a contract about the bank, but that he always said that his word was good. One of the signers says:

"At each meeting, McKeon said his word was good. He never said he had not made such an agreement. We had a meeting * * * after the bank closed. That is the first time that he denied the agreement. * *. * At the third renewal, * * * in March, 1926, * * * we all told him that he had not kept his word by signing the agreement. He said: 'My word is good' * * * 'My word is good to my agreement.' * * * I knew at that time that he was refusing to sign the written agreement. He said his word was good on verbal agreement."

Another witness says that, at the meeting on March 11, 1926:

"Adamson said he did not like to sign it,—never came up to his agreement and signed the contract he was to sign. McKeon would always say, 'My word is good.' Adamson, Rogers, and Dozler would always bring it up that they would sign it under the same conditions as they did before. And I would say, 'Well, if you sign it that way, I will, too.' McKeon just went ahead and signed it, and we all went ahead and signed it. * * * It was signed after these statements were made. * * * At the meeting when McKeon refused to sign the written agreement, the cause assigned was that he didn't want the contract to appear in the bank. * * * I do not remember separately what took place at the November and March meetings at which this note was renewed. Just about the same thing; cannot separate the two meetings in my mind."

Another witness says that defendant "said the banking department might find that written contract around there, and put a revocation on the bank. * * * I was present in March when the last renewal of this note was made. This meeting was held in the bank. I said this time, before I signed that note: 'It is to be understood that our original agreement made when we signed the original note is to have effect on this note.' * * * others said something similar. McKeon signed the note first. Nothing further was said. I would not have signed that $10,000 note, had it not been for the conditions testified to with reference to the limitation of the amount of my liability, nor any of the renewals."

The foregoing sufficiently indicates the trend of plaintiffs' evidence, for the purpose of the question now under consideration. There was sufficient evidence of the renewal of the oral agreement at the time of the last renewal of the note to warrant the submission of the question to the jury.

III. Defendant urges that he pleaded estoppel, and that the court should have instructed the jury on that defense, but failed to do so. Defendant in one division of his answer amalgamates the two defenses of waiver and estoppel.  He pleads that, at the time of the signing of the various renewals, plaintiff and his assignors knew that defendant had refused to sign the agreement, and, notwithstanding such knowledge, they executed renewals by which the time of payment was extended, thereby changing the previously existing contract with the loaning bank, and that they waived their right to assert the alleged agreement, and "by their conduct in the premises, have estopped themselves from now asserting the existence of any such agreement. * * * That, in signing the original note and each of said renewals, this defendant relied upon the fact that the plaintiff and his said assignors were advised that the defendant had refused to sign the written agreement * * * and refused to be bound by any oral agreement, * * * and denied the making of any such oral agreement, and that, by reason of the signing of said note by the said plaintiff and his said assignors, and each renewal thereof, this defendant was misled to his injury, and that all of said parties are now estopped on account thereof. * * *" The court charged the jury on the law of waiver, saying that, if plaintiff and his

assignors entered into the alleged oral agreement, and, as part of it, it was understood that a written agreement embodying the same terms should be made, and that such written agreement was not entered into, and defendant refused to make it, and plaintiffs knew of defendant's refusal, and, notwithstanding such knowledge, signed the renewal note, then they would be deemed to have waived any right to rely on the oral agreement, unless it was agreed, when the renewal note of March 11, 1926, was executed, that defendant's liability should be as claimed by plaintiff. The court did not instruct upon the law of estoppel. The alleged estoppel, however, could not, under the facts as they are now conclusively established, apply with respect to defendant's liability on the last renewal note, that of March 11, 1926, upon which judgment was recovered and paid by plaintiffs. Plaintiffs pleaded that the renewal note of March 11, 1926, was executed on the agreement among all the parties that their liability should continue upon it in the same manner and to the same extent as upon their original note. There is evidence supporting such allegation. If the agreement with respect to the original note was as claimed by plaintiffs, and if, when the last note was made, that agreement was renewed, defendant was not, at the time of executing the renewal note of March 11, 1926, repudiating his proportionate liability, but was reaffirming it. Plaintiffs were not waiving the original agreement or estopping themselves from asserting their rights under it, but were executing the last note in pursuance, not only of the original agreement, but of its renewal. The validity of such renewal of the original agreement (if made, and aside from the statute of frauds,) is not disputed. We are of the opinion that the verdict conclusively establishes that the original note and also that of March 11, 1926, were executed by plaintiffs and defendant on the agreement for proportionate liability, as alleged by plaintiffs, and that defendant was not prejudiced by failure to instruct on the law of estoppel.

The court instructed the jury that, in the absence of an agreement to the contrary, the joint makers are, among themselves, deemed in law to be liable toward the payment of the note in equal amounts; that, in order to entitle plaintiffs to recover more than one fifth of the amount paid in settlement of the judgment, the burden was upon plaintiffs to establish that, when the original note was given, "and also when and at the time of the

execution and signing of the last renewal note, dated March 11, 1926, it was mutually understood and agreed by and between all the signers of such notes that among themselves they should be liable for the payment of the same in proportion to the number of shares each of them held to the 37 shares held by them all, and that they orally understood and agreed among themselves that the defendant McKeon's liability for the payment of said note, as among themselves, was to be for the payment of twenty-five thirty-sevenths thereof plus $2.00 * * *;'' but that, if plaintiffs have failed to establish all of such matters, they would be entitled to recover only the one fifth.

The court further charged that, if the agreement simply was that a written contract was to be executed, the refusal of defendant to execute it would relieve defendant from responsibility to pay more than one fifth, because of subsequent renewals, unless plaintiff had established that, at the time of renewing, in March, 1926, defendant and the other signers mutually agreed that they were to be liable upon the terms thus to have been expressed in the written contract, and that plaintiffs' right to recover on the alleged oral agreement was dependent upon whether or not such an agreement was made at the time of the giving of the last renewal. The court also told the jury that, if the written agreement was not made, and defendant refused to make it, and at the time of the renewals, plaintiffs, knowing of such refusal, signed the renewal, then they would be deemed to have waived the oral agreement, unless it was agreed between defendant and the other makers, when the renewal of March 11, 1926, was executed, that defendant's liability should be as claimed by plaintiffs. The court later reiterated that, in order to entitle plaintiffs to recover the twenty-five thirty-sevenths, it was essential for the jury to find that, when the last renewal was signed, it was agreed among all the signers that their liability was to be based on the pro-rata share of each signer to the thirty-seven shares; that, ''in order to constitute such an agreement, the minds of all the parties must have met and agreed upon such basis of liability at such time.'' The court further charged that mere silence or refusal to speak would not itself be evidence that defendant intended to enter into the alleged contract, nor would the mere signing of the original, or any of the renewals, by defendant be, in and of itself, evidence of intention to enter into such alleged oral contract; that, ''to

constitute an agreement on the part of the defendant to make himself liable on the alleged contract, there must be such showing of agreement on his part, by affirmative act or words of defendant, as manifest an unqualified formed determination on his part to enter into and be bound by such agreement.''

The jury were expressly told that, in order to entitle plaintiffs to recover more than one fifth of the amount paid by them, the burden was upon them to establish that, when the original note was given, on March 11, 1925, it was agreed by all the signers that they should be liable in proportion to the stock held by them, and that defendant's liability was to be for twenty-five thirty-sevenths plus $2.00. Repeatedly the jury were told that they must find that the alleged pro-rata agreement was made at the time of the last renewal. The jury found for the plaintiffs, and must be held to have established thereby that such agreement was made as they were told was essential to the return of such verdict. On this record, therefore, any error in the instruction on the law of estoppel or failure to instruct thereon was without prejudice; for the alleged estoppel could not, on the facts found by the jury, operate as against the last note.

IV. Defendant complains that one of the instructions is faulty in that the court allowed the jury to consider all the conversations that had taken place before the last renewal, as bearing on  the question of whether the alleged oral agreement was also made at that time. From the recitals of the evidence which have been made, we are of the opinion that the alleged agreements were so interwoven, and the later agreements and defendant's alleged statements and admissions were such, that the jury would necessarily have to take into account the earlier conversations in determining the dispute as to what the later one was.

Further discussion is not called for by the other propositions submitted by the defendant.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.