424 F.2d 142
 J. M. Howard BAYLISS, Appellant,
v.
Norman E. ROOD, Trustee in Bankruptcy, Appellee.
In the Matter of WEST VIRGINIA INDUSTRIES DEVELOPMENT
CORPORATION, a West Virginia corporation, Bankrupt.
 No. 13212.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1969.
Decided April 13, 1970.
 
 Paul N. Bowles, Charleston, W. Va. (Stone, Bowles, Kauffelt & McDavid, Charleston, W. Va., on the brief), for appellant Bayliss.
 Robert H. Burford, Huntington, W. Va., for petitioner Rood.
 Raymond D. Battocchi, Atty., Civil Division, Dept. of Justice (William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Atty., Dept. of Justice, and Milton J. Ferguson, U.S. Atty., on the brief), for respondent Small Business Administration.
 Paul M. Friedberg, Charleston, W. Va., on the brief for respondent B & L Furniture Co.
 Before BOREMAN, BRYAN and BUTZNER, Circuit Judges.
 BOREMAN, Circuit Judge:
 
 
 1
 The sole appellant, J. M. Howard Bayliss, appeals from the judgment of the district court, which essentially approved and affirmed the holding by the Referee in Bankruptcy (hereafter Referee) that Bayliss and one Rolfe Lee were obligated to the Trustee in Bankruptcy (hereafter Trustee) in the amount of $77,266.50 plus interest,[1] representing funds improperly withdrawn from the now bankrupt West Virginia Industries Development Corporation (hereafter Development or corporation).
 
 
 2
 The findings of fact by the Referee were adopted by the district court and we shall do no more than state briefly the highly pertinent facts necessary to an understanding of this opinion.
 
 
 3
 Development was organized in 1961 for the purpose of constructing resort motels, its lone project being located near Point Pleasant, West Virginia. Lee was its president, both Bayliss and Lee served as directors during its existence, and both were among its top five shareholders from the date of its organization.
 
 
 4
 Development obtained an authorization from the Area Redevelopment Administration on May 11, 1964, for a loan to be made by the Small Business Administration (hereafter SBA) in the amount of $1,041,500, upon certain terms and conditions to be met by the corporation. Construction of the motel was begun in June of 1964, and a $400,000 loan to the corporation from Huntington Trust & Savings Bank was closed in September 1964. Between the beginning of construction and the closing of the $400,000 loan Development had exhausted its cash capital obtained through sale of its stock and further funds were required to meet payments due the contractor. In July and August of 1964, Bayliss furnished $95,000 and Lee $55,000 to Development with which to meet the contractor's demands and these advancements were evidenced by notes of the corporation.
 
 
 5
 The SBA loan of $1,041,500 was closed near the end of October of 1964, but prior to this closing and the making of the initial disbursement thereunder representatives of the SBA insisted that the corporation obtain working capital of $125,000 (required under the Area Redevelopment Administration's authorization of the SBA loan) as well as an additional $25,000 to meet possible overruns necessary to the completion of the project. In order to comply with these requirements Development obtained an agreement (hereafter tripartite agreement) by Bayliss and Lee that the $150,000 which they had previously advanced would remain in the project on a permanent basis in order to complete facilities and provide working capital. This agreement was reduced to writing in the form of letter agreements from Bayliss and Lee, dated November 2, 1964, and October 30, 1964, respectively. In this tripartite agreement, Bayliss and Lee reserved three options: (1) they could treat the $150,000 advancement as a loan to the corporation and receive a subordinated note; (2) they could treat the $150,000 advancement as a purchase of capital stock of the corporation; or (3) they could procure purchases of capital stock of the corporation by others in a like amount so as to permit the release of their $150,000.
 
 
 6
 Thereafter, without the knowledge of SBA and in violation of their agreement to leave the funds in the corporation on a permanent basis, Bayliss and Lee maneuvered the return of $125,000 of the $150,000 which they had advanced. Bayliss received his entire advancement of $95,000 and Lee received $30,000 of the $55,000 which he had advanced. Subsequently, Bayliss and Lee obtained an agreement from SBA that they might temporarily withdraw the $150,000 provided that Bayliss and Lee would restore any withdrawn funds upon demand by Development or by SBA. This agreement as to temporary withdrawal was evidenced in part by a letter agreement executed by Bayliss, Lee and Development dated December 14, 1964, and in part by a demand note of the same date executed by Bayliss and Lee payable to the corporation in the amount of $150,000.
 
 
 7
 In early May 1965, the corporation became insolvent in the sense that it was unable to pay its debts as they matured, and it became insolvent in the sense that its liabilities exceeded the fair value of its assets on June 4, 1965. Although the resort was opened for business on June 4, 1965, Development was without sufficient funds to pay the full cost of the project or to operate the resort which eventually closed on February 15, 1966.
 
 
 8
 In July and August of 1965, the SBA made demand upon Bayliss and Lee to restore the withdrawn $125,000 pursuant to the terms of the tripartite agreement, but they notified SBA that they did not intend to repay that amount. Development made no formal demand on Bayliss and Lee for payment. Litigation ensued, the Referee and the district court ruled that Bayliss and Lee were liable to the Trustee for the funds withdrawn from the corporation, and Bayliss alone prosecutes this appeal.
 
 
 9
 Bayliss now asserts that the district court erred in the following particulars: (1) in finding that the $125,000 recovered from Development by Bayliss and Lee was impressed with a trust in favor of Development or its creditors; (2) in failing to hold that the tripartite agreement constituted an executory contract which has since become unenforceable; and (3) in failing to allow Bayliss and Lee to set off Development's obligation to them which would have arisen immediately upon Bayliss' and Lee's tender to the corporation of the withdrawn $125,000.
 
 
 10
 In passing upon the asserted error (1) above the district court said:
 
 
 11
 'In view of this fiduciary relationship between Lee and Bayliss and the corporation and the circumstances surrounding the transactions at issue in this proceeding, it is our opinion that the Referee was justified in finding that under such circumstances equity would impose a trust so as to bind Bayliss and Lee as trustees with an obligation to restore the unremitted funds.'
 
 
 12
 It is well established that a controlling stockholder, director or officer of a corporation occupies a fiduciary relationship to the corporation.[2] As such fiduciaries, their powers are powers in trust, their dealings with the corporation are subject to rigorous scrutiny, and they must bear the burden of proving the good faith and inherent fairness of their transactions with the corporation. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The record clearly shows that Bayliss and Lee agreed to leave their cash advancement of $150,000 with Development on a permanent basis. Their surreptitious withdrawal of $125,000, prior to the SBA's subsequent approval of a temporary withdrawal of the funds, was accomplished when Lee was president and when both Bayliss and Lee were directors and major stockholders of the corporation. We affirm the district court's holding that Bayliss and Lee, in effect, were charged in their relationship to the corporation, with the duties, responsibilities and obligations of trustees and that they held the withdrawn funds in trust for the corporation.
 
 
 13
 Bayliss contends that the Trustee represents the creditors of a bankrupt, that the fiduciary relationship of an officer or director of a bankrupt corporation does not extend to creditors of the corporation, and, therefore, he and Lee should not be held responsible to the Trustee. We find no merit in this contention. A trustee in bankruptcy represents and stands in the place of the bankrupt itself and can enforce rights of action which the bankrupt could have enforced. Bankruptcy Act, 11 U.S.C. 110(a)(5). As the Court stated in Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 84 L.Ed. 281 (1939):
 
 
 14
 'While normally that fiduciary obligation (of a dominant stockholder, director or officer) is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of the bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation-- creditors as well as stockholders.'
 
 
 15
 Bayliss further argues that the agreements between him and Lee, SBA and Development constituted an executory contract which has since become unenforceable because SBA's demand for payment did not occur until after the bankruptcy of Development 'commercially frustrated' the purposes of the allegedly executory contract and for the reason that the Trustee waited beyond the Bankruptcy Act's sixty-day statutory period[3] within which to elect to enforce the allegedly executory contract. We find these arguments unpersuasive. These agreements certainly created more than a mere executory contract; they created a clear and simple debt from Bayliss and Lee to the corporation, evidenced by the $150,000 note payable upon demand. Bayliss and Lee may not escape their liability for this debt simply by refusing to pay it.
 
 
 16
 Having concluded that these transactions created a debt and having rejected Bayliss' contention that the agreements constituted merely an executory contract we find it unnecessary to discuss Bayliss' related claims of 'commercial frustration' and the failure of the Trustee to 'assume' the allegedly executory contract within the statutory period.
 
 
 17
 Finally, Bayliss contends that even if he and Lee are obligated to the Trustee for the withdrawn funds, they should be entitled to set off the equivalent sum since, upon the tender of the withdrawn funds, Development would immediately have been liable to them for the amount tendered. Again we are unpersuaded. Under the express terms of the tripartite agreement Bayliss and Lee could, at their option or election, receive Development's subordinated note in exchange for their agreeing to leave their $150,000 advancement with the corporation on a permanent basis.[4] The corporation's note to Bayliss and Lee clearly would have been subordinate to the SBA note, and the obvious recognition of this fact by Bayliss and Lee is evidenced by Lee's letter regarding the tripartite agreement in which he stated that the $150,000 would '* * * remain in this project on a subordinated basis * * *' and by the inclusion of the phrase 'without offset' in the $150,000 demand note of Bayliss and Lee to the corporation. This lack of mutuality of obligations is fatal to Bayliss' claim of the right of set-off since the Bankruptcy Act, 11 U.S.C. 108(a), requires debts to be mutual before a set-off will be allowed.[5] For debts to be mutual they '* * * must be in the same right and between the same parties, standing in the same capacity.' 4 Collier on Bankruptcy (14th ed.) P68.04(2.1) at 867. Even had the debt not been subordinated, Bayliss and Lee, in their fiduciary capacity, would not be entitled to a set-off against the corporation. It is well settled that '* * * where the liability of the one claiming a set-off arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debt or credits does not exist, and such person may not set off a debt owing from the bankrupt against such liability.' 4 Collier on Bankruptcy (14th ed.) P68.04(2.1) at 872; Western Tie and Timber Co. v. Brown, 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905); Arkansas Fuel Oil Co. v. Leisk, 133 F.2d 79 (5 Cir. 1943); Lytle v. Andrews, 34 F.2d 252 (8 Cir. 1929).
 
 
 18
 We reach the conclusion that Bayliss and Lee are obligated to the Trustee for the funds[6] which they improperly withdrew from the now bankrupt corporation; they may not set off against that obligation their subordinated claim which would have arisen upon their election to receive a subordinated note from the corporation. Therefore, the judgment below will be
 
 
 19
 Affirmed.
 
 
 
 [1]
 The district court's only modification of the Referee's ruling was to disallow a $2,000 salary claim of Lee which had been approved by the Referee. The total amount due the bankrupt corporation, $77,266.50, was determined from calculations based upon evidence that Lee had paid to the corporation a total of $56,449.83, that Bayliss had paid to the corporation a total of $13,000 and that he was entitled to accrued interest of $1,283.67. Consequently, Bayliss and Lee have paid a total of $70,733.50 of the $150,000 which they were obligated to pay, leaving a balance due of $79,266.50. The Referee's allowance of Lee's salary claim for $2,000 reduced the amount owing to $77,266.50, but the district judge's disallowance of this claim reinstated $79,266.50 as the balance due
 
 
 [2]
 Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Braddy v. Randolph, 352 F.2d 80 (4 Cir. 1965); Meadows v. Bradshaw-Diehl Co., 139 W.Va. 569, 81 S.E.2d 63 (1954); Young v. Columbia Oil Co., 110 W.Va. 364, 158 S.E. 678 (1931); Elliott v. Farmers' Bank, 61 W.Va. 641, 57 S.E. 242 (1907). Generally see 19 Am.Jur.2d, Corporations, 1272, at 679-681
 
 
 [3]
 Section 70(b) of the Bankruptcy Act, 11 U.S.C. 110(b), provides that the trustee must assume or reject all executory contracts of the bankrupt within sixty days after the adjudication
 
 
 [4]
 Actually, Bayliss and Lee never did exercise their option to receive the corporation's subordinated note, but we shall treat this issue as though they had so elected and had received such note
 
 
 [5]
 11 U.S.C. 108(a)
 In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
 
 
 [6]
 See footnote 1 for explanation of the balance due and owing from Bayliss and Lee to the Trustee in Bankruptcy