315 S.E.2d 406

**ESTATE OF J.M.H. BAYLISS by Paul N. BOWLES, Ancillary Administrator**

**v.**

**Rolfe LEE.**

**No. 15816.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1984.

Decided Feb. 8, 1984.

Rehearing Denied April 11, 1984.

Paul E. Frampton, J. Thomas Lane, Bowles, McDavid, Graff & Love, Charleston, for appellant.

Charles W. Yeager, Steptoe & Johnson, Charleston, for appellee.

MILLER, Justice:

In this case, we are asked to apply either the doctrine of *res judicata* or principles of collateral estoppel to reverse the circuit court's judgment.

The Estate of J.M.H. Bayliss brought a civil action based on contribution to recover on what it claimed was a joint indebtedness owed by the plaintiff's decedent Bayliss and the defendant, Rolfe Lee, which totaled $94,846.22. Bayliss had during his lifetime paid the entire amount.

The underlying obligation arose as a result of Bayliss and Lee being shareholders and directors in a corporation which developed a motel complex near Point Pleasant, West Virginia. The project was financed in part with a Small Business Administration (SBA) loan. The project was not successful and the corporation was placed in bankruptcy in September of 1966 in the United States District Court for the Southern District of West Virginia.

As a part of the bankruptcy proceedings, the trustee in bankruptcy sought to recover against Bayliss and Lee the amount of $150,000 based on a prior obligation they had made with the SBA and the bankrupt corporation to provide this amount of money for additional working capital for the corporation. The referee in bankruptcy found that Bayliss and Lee were jointly obligated on a $150,000 note to the corporation, which enured to the benefit of the trustee in bankruptcy.

Both Bayliss and Lee asserted certain offsets against the obligation which the referee found to be proper. This ruling was reviewed in the federal district court, which essentially concurred with the referee's order. Thereafter, Bayliss made a further appeal to the United States Court of Appeals for the Fourth Circuit, which affirmed the district court. *Bayliss v. Rood*, 424 F.2d 142 (4th Cir.1970).

On remand, the referee in bankruptcy entered a joint judgment against Bayliss and Lee in the amount of $76,570.61, together with interest in the amount of $17,-955.71 and costs totaling $319.90, for a total of $94,846.22. As previously noted, this entire amount was paid by Bayliss, whose estate then brought this action in the Circuit Court of Mason County to recover contribution.

In the circuit court, both parties filed a joint stipulation of facts and each moved for summary judgment. Lee argued that equal contribution was inappropriate because after the corporation had been formed Bayliss and Lee had advanced $95,000 and $55,000, respectively, to the corporation. Subsequently, they had withdrawn $125,000 from the corporation, of which $95,000 was kept by Bayliss and $30,000

was received by Lee. Thus, Lee argues, Bayliss was made whole on his original contribution of $95,000, but he only received $30,000 of the original $55,000 contributed, leaving him $25,000 short. Consequently, Lee asserts that equal contribution is not appropriate.

However, Lee's argument falls short factually in that the proceedings in federal court show that while permission by the SBA had been given to withdraw their $150,000 capital contribution, the SBA required both Bayliss and Lee to execute a joint demand note to the corporation. The purpose of the note was to guarantee a contribution of capital to the corporation in the amount of $150,000, as indicated by this statement in *Bayliss*, 424 F.2d at 145:

"Subsequently, Bayliss and Lee obtained an agreement from SBA that they might *temporarily* withdraw the $150,000 provided that Bayliss and Lee would restore any withdrawn funds *upon demand* by Development or by SBA. This agreement as to temporary withdrawal was evidenced in part by a letter agreement executed by Bayliss, Lee and Development dated December 14, 1964, and in part by a demand note of the same date executed by Bayliss and Lee payable to the corporation in the amount of $150,-000." (Emphasis in original)

The Circuit Court of Appeals in the course of addressing the argument that the $150,000 demand note and the SBA agreement were executory and unenforceable, characterized the nature of the obligation owed by Bayliss and Lee:

"These agreements certainly created more than a mere executory contract; they created a clear and simple debt from Bayliss and Lee to the corporation, evidenced by the $150,000 note payable

upon demand. Bayliss and Lee may not escape their liability for this debt simply by refusing to pay it." *Bayliss*, 424 F.2d at 146–47.

Thus, it appears that the joint obligation found in the federal bankruptcy court arises by virtue of the $150,000 note executed by Bayliss and Lee in compliance with their SBA commitments. This note obligation was entirely independent of their initial capital contributions.

There is no doubt that the federal bankruptcy court did give Bayliss and Lee credit for any capital contributions made to the corporation, as summarized in note 1 of *Bayliss*, 424 F.2d at 144:

"The total amount due the bankrupt corporation, $77,266.50, was determined from calculations based upon evidence that Lee had paid to the corporation a total of $56,449.83, that Bayliss had paid to the corporation a total of $13,000 and that he was entitled to accrued interest of $1,283.67. Consequently, Bayliss and Lee have paid a total of $70,733.50 of the $150,000, which they were obligated to pay, leaving a balance due of $79,-266.50." [1]

The Bayliss Estate does not demand that Lee share equally on the net judgment of $94,846.22 that Bayliss paid. It is acknowledged that prior to the payment of the net judgment, Lee had been credited with a higher share of payments on the $150,000 note, i.e. $59,145.72 to $14,483.67. The Bayliss Estate is willing to give Lee credit for the $59,145.72 paid as against the total obligation.[2]

The parties recognize that a right of contribution is basically derived from equitable principles, a point which we addressed in *Sydenstricker v. Unipunch*

---

**1.** On page 8 of the bankruptcy referee's findings of fact, the referee, in calculating the credit due Lee, mentioned the $25,000 balance on Lee's original advancement of $55,000 and that he was not repaid when the $125,000 was removed from the corporation by Bayliss and Lee: "The remaining $25,000.00 in essence represents the balance of the $55,000.00 which Lee advanced as earlier noted in the summer of 1964 and which was the subject of a redeposit to the credit of the bankrupt on December 4, 1964."

**2.** The parties agree that the total obligation is the $150,000 joint note plus $17,955.71 interest and $319.90 court costs or $168,275.61. One-half of this amount is $84,137.80. The Bayliss Estate recognizes that Lee should be credited with $59,145.72, leaving the balance due in the contribution suit of $24,992.08.

*Products, Inc.,* 169 W.Va. 440, 288 S.E.2d 511, 516 (1982):

> "The doctrine of contribution also has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation. *Tennant v. Craig,* 156 W.Va. 632, 195 S.E.2d 727 (1973); *Hardin v. New York Central Railroad Company,* 145 W.Va. 676, 116 S.E.2d 697 (1960); *Brewer v. Appalachian Construction, Inc.,* 135 W.Va. 739, 65 S.E.2d 87 (1951); 18 Am.Jur.2d *Contribution* § 1, *et seq.* (1965)." [3]

▮ Ordinarily, where two parties are co-obligors on a note and one party pays a disproportionate share of the joint obligation, he is entitled to contribution from his co-obligor. We spoke to this rule in *Newton v. Dailey,* 167 W.Va. 347, 280 S.E.2d 91, 94 (1981):

> "Under our law, co-obligors on a note are jointly and severally liable. If one co-obligor is required to pay the entire obligation, he may seek contribution or reimbursement from his co-obligor for fifty per centum of the amount paid. *Cost v. MacGregor,* 124 W.Va. 204, 19 S.E.2d 599 (1942); *Bringardner v. Rollins,* 102 W.Va. 584, 135 S.E. 665 (1926); *McKown v. Silver,* 99 W.Va. 78, 128 S.E. 134 (1925); *Huffman v. Manley,* 83 W.Va. 503, 98 S.E. 613 (1919)."

▮ This rule of equal or *pro tanto* contribution, however, is not absolute if it can be shown that the co-obligors have by agreement made a different allocation as to their liability *inter se* or one or more of the co-obligors have received a disproportionate benefit from the transaction, then disproportionate contribution may be allowed. *Betts v. Brown,* 219 Ga. 782, 136 S.E.2d 365 (1964); *Adamson v. McKeon,* 208 Iowa 949, 225 N.W. 414, 65 A.L.R. 817 (1929); *Fithian v. Jamar,* 286 Md. 161, 410 A.2d 569 (1979); *Brown v. Goldsmith,* 437 P.2d 247 (Okl.1968); *Ruckdeschel v. Howell,* 337 Pa. 517, 12 A.2d 62 (1940); *Dittberner v. Bell,* 558 S.W.2d 527 (Tex.Civ.App.1977); *Cooper v. Greenberg,* 191 Va. 495, 61 S.E.2d 875 (1950); 18 Am.Jur.2d *Contribution* §§ 23 & 24 (1965); Annot., 64 A.L.R. 213 (1929).

We spoke to this issue in *McKown v. Silver,* 99 W.Va. 78, 128 S.E. 134 (1925), where a joint accommodation endorser sought to defeat a contribution suit, brought by a co-obligor who had paid off the entire obligation, by claiming that the other endorsers had agreed to save him harmless. We rejected his claim on the basis that he had failed to prove this special agreement.[4]

▮ In another contribution case, *Huffman v. Manley,* 83 W.Va. 503, 98 S.E. 613 (1919), we found that an accommodation maker of a note could escape contribution since he had proven that he had a separate understanding not to be liable in contribution. We expressed this general rule:

> "It is very well settled that where parties execute a note like this they are *prima facie* joint makers, but as between them they may show what the real understanding was, and what their real relation is. Of course, so far as the holder of the note is concerned, unless he discounts it with full knowledge and with the understanding that some are sureties for the others, they are all joint makers and equally liable." 83 W.Va. at 505–06,

---

**3.** In *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679, 686 (1982), we made this statement with regard to the term *"pro tanto* liability" or obligation: "The traditional method of assigning *pro tanto* liability was to divide the judgment by the number of debtors who were liable on the judgment. *Cf. Hutcherson v. Slate,* [105 W.Va. 184, 142 S.E. 444 (1928)]; Prosser, *Law of Torts* § 50 at 305–10 (4th ed. 1971)."

**4.** In Syllabus Point 2 of *McKown,* we said:

> "Where one of several joint endorsers, contrary to the legal effect of his endorsement, asserts that his contract with his co-endorsers was that he was to be bound differently from the legal import of his endorsement, the burden is upon him to establish such fact by a preponderance of the evidence, without which he should not prevail."

98 S.E. at 614.[5]

*See also Davis v. Davis,* 128 W.Va. 257, 36 S.E.2d 417 (1945).

It is apparent that Lee sought to alter his contribution liability in the circuit court by attempting to assert that there was a disproportionate benefit received by Bayliss when the $125,000 had been withdrawn from the corporation. As previously stated, the disproportionality arose when Bayliss received $95,000, thus totally reimbursing him for his capital contribution. Whereas, Lee received only $30,000, which left him $25,000 unreimbursed on his $55,000 initial contribution.

However, as we have also previously noted, this $25,000 deficiency was credited to Lee by the bankruptcy court in that it became a part of the $59,145.72, which was offset on the $150,000 obligation. *See* note 1, *supra.* Moreover, it is this same offset of $59,145.72 that the Bayliss Estate is willing to utilize in determining the net contribution owed by Lee. Finally, and most importantly, the $150,000 joint note obligation arose after the initial capital contribution of Bayliss and Lee and superceded the initial capital contributions. Lee does not assert now, nor did he below, that he had some special agreement with Bayliss as to contribution *inter se* with regard to the $150,000 note.

These offsets were ascertained and settled in the federal bankruptcy action along with the threshold question of the Bayliss-Lee joint obligation of $150,000. Both Bayliss and Lee were parties to the federal action. We, therefore, conclude that further relitigation of these issues is foreclosed under principles of collateral estoppel as set out in Syllabus Point 2 of

*Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983):

"Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

" 'But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.' Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)." [6]

Again, we stress that neither party disputes the basic facts since they are contained in the factual stipulation filed in the circuit court. The federal court's conclusion that the $150,000 note was a joint obligation is not assailable in our courts under principles of collateral estoppel.[7] Finally, Lee did not advance any facts below that would show a special agreement relating to contribution *inter se* and his credits for capital contribution have been properly taken into account on the net joint liability.

We, therefore, believe that the circuit court erred in granting summary judgment to Lee and should have awarded summary judgment to the Bayliss Estate for $24,992.08, together with interest from the date

**5.** While not germane to this case, it bears emphasizing as stated in *Huffman,* that the ability of co-obligors to prove some agreement *inter se* which limits their liability on contribution to each other, such an agreement cannot ordinarily be used to alter their obligation to the principal creditor.

**6.** Neither party disputes that the federal action is a final judgment, thus the other element of collateral estoppel is fulfilled as set out in Syllabus Point 3 of *Conley:* "The doctrine of collateral estoppel also requires as does *res judicata*

that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties."

**7.** It is generally recognized that where a bankruptcy court has obtained proper jurisdiction, its judgments are entitled to the principles of collateral estoppel. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Rushton v. Shea,* 419 F.Supp. 1349 (D.Del.1976); 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice ¶ 0.419[3.2] (1983 rev.).

that the joint payment of $94,846.22 was paid by Bayliss.

■ We have held that in an appropriate case where the facts preponderate against the findings of a trial court sitting in lieu of a jury that this court will enter such judgment on the evidence as the trial court should have done. We stated this principle in Syllabus Point 9 of *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965), where we concluded that a supply company was entitled to a judgment against an appliance dealer:

> "When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered."

*See also Huntington Development & Gas Co. v. Topping*, 115 W.Va. 364, 176 S.E. 424 (1934); *McKown v. Citizens State Bank of Ripley*, 91 W.Va. 716, 114 S.E. 271 (1922).

We, therefore, conclude that in view of the foregoing principles, the Bayliss Estate is entitled to recover the sum of $24,992.08 from Lee, together with interest thereon from the date that Bayliss paid the $94,846.22 judgment in the bankruptcy action, together with costs. Accordingly, judgment is rendered here in such amount and the decision of the Circuit Court of Mason County is reversed.

Reversed and Rendered.