735 S.E.2d 559

**Benjamin BEVERLY, Defendant Below, Petitioner**

v.

**Gary Kent THOMPSON and Miki Thompson, Husband and Wife, Plaintiffs Below, Respondents.**

No. 11–1188.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 2012.

Decided Oct. 19, 2012.

Dissenting Opinion of Justice Benjamin Nov. 7, 2012.

Scott H. Kaminski, Esq., Balgo & Kaminski, Charleston, WV, for Petitioner.

Lauren Thompson, Esq., Thompson Law Office, Williamson, WV, for Respondents.

PER CURIAM:

This action is before this Court upon the appeal of the petitioner and defendant below, Benjamin Beverly ("Beverly"), from the July 20, 2011, order of the Circuit Court of Mingo County denying his motion for a new trial. That order followed a bench trial which resulted in the entry of judgment in favor of the respondents and plaintiffs below, Gary Kent Thompson and Miki Thompson, ("respondents") in the amount of $24,080.94. Beverly and the respondents were co-guarantors of a promissory note signed to obtain a bank loan to pay the debts of the parties' failed corporation, B & T Services d/b/a Precision Automotive. The respondents paid the note from their personal funds. The $24,080.94 represents the extent of Beverly's liability for contribution to the respondents.

Upon careful review of the briefs and argument of the parties, the record-appendix and the law relevant to this matter, this Court is of the opinion that the order denying the motion for a new trial should not be disturbed. Accordingly, for the reasons stated below, the July 20, 2011, order of the Circuit Court of Mingo County is affirmed.

## I.

### Factual Background

On January 19, 1995, the West Virginia Secretary of State issued a Certificate of Incorporation for B & T Services, Inc. d/b/a Precision Automotive. The incorporators and their respective shares of stock were as follows: the respondents, Gary Kent Thompson and Miki Thompson, husband and wife, 25 shares each, and Beverly's wife Sue ("Sue"), 50 shares. Although involved in the planning of the business, Beverly himself did not receive any stock in the corporation. Both couples, however, placed trust deeds on their homes, securing a total of $100,000 in start-up money. The principal place of business of the corporation was in Williamson, West Virginia. The parties intended to share equally in the profits and losses.

It is undisputed that Sue played no role in the management or operation of the corporation. On the other hand, Beverly, her husband, worked in the business on a daily basis, made management decisions, handled the corporation's routine financial matters and was paid for his services. Moreover, during the bench trial, Sue testified that she and Beverly intended to share her half of the profits.

However, in June 1997, a final decree was entered in the Circuit Court of Mingo County divorcing Benjamin Beverly and Sue on the ground of irreconcilable differences. The decree, *inter alia,* awarded Sue the former marital residence and directed her to transfer all stock she owned in B & T Services, Inc., back to the corporation. Sue's 50 shares of stock, however, were never transferred back to the corporation. The respondents assert that Beverly received Sue's interest in the corporation in exchange for the former marital residence.

Although stable initially, no profits from B & T Services, Inc., were ever distributed to the parties, and the corporation began to experience financial difficulties. In November 1999, B & T Services, Inc., obtained a commercial bank loan in the principal amount of $42,116.68. Although the record is unclear as to signatures, a written business loan agreement associated with that loan indicates that the respondents, and Beverly, were each listed as 100% guarantors. Sue, however, was not involved in the transaction. The loan was subsequently repaid.

The current matter concerns a separate commercial bank loan obtained by B & T Services, Inc., on March 24, 2001, from Community Trust Bank, in Williamson, in the principal amount of $45,066.00. The promissory note was executed by the respondents only, and the loan proceeds were used to pay the debts of the corporation. The respondents and Beverly signed Commercial Guaranties, each individual thereby becoming a guarantor of payment of 100% of the note. As before, Beverly's former wife, Sue, was not involved in the transaction. The Commercial Guaranty signed by Beverly, for example, provided: "The word 'Guarantor' means each and every person or entity signing this Guaranty, including without limitation Benjamin Beverly."

Soon after the March 24, 2001, loan was obtained, B & T Services, Inc. d/b/a Precision Automotive closed, and its assets were sold. It is undisputed that the corporation could not pay its debts, which included thousands of dollars of unpaid State taxes. Part of the March 24, 2001, loan proceeds were used to pay a portion of the previous 1999 loan. With regard to equipment, respondent Gary Thompson testified:

> We tried to sell off some equipment. We sold some tire machines, an alignment machine. Those profits were used to pay off debt. * * * We sold off several pieces when Mr. Beverly was still there, trying to make ends meet; and then the owner of the building locked the doors. We lost a lot of equipment in the building.

Nevertheless, the respondents, Gary and Miki Thompson, made monthly payments from their personal funds with regard to the March 24, 2001, loan until it was satisfied in April 2009. The total amount they paid was $48,161.88.

## II.

### Procedural Background

On September 17, 2009, the respondents filed an action in the Circuit Court of Mingo County against Beverly and his former wife, Sue. Although the complaint has not been included in the documents before this Court, the record-appendix demonstrates that the respondents sought contribution for the amounts paid from their personal funds in satisfaction of the March 24, 2001, commercial loan and promissory note.

A bench trial was conducted on April 29, 2011, at the conclusion of which the circuit court ruled in favor of the respondents. The court determined that Beverly was liable to the respondents in the amount of $24,080.94, representing one half the $48,161.88 they paid from their personal funds. Accordingly, on June 22, 2011, the circuit court entered a judgment order against Beverly and in favor of the respondents in the amount of $24,080.94. The respondents' claim against Sue was dismissed on the ground that she had been completely "distant from the operations and business" of the corporation. As to Beverly himself, the order stated:

> Beverly was not a shareholder in the corporation and therefore is not liable for any debts of the corporation including any taxes owed to the State of West Virginia. However, defendant Benjamin Beverly signed as a co-guarantor with plaintiffs (100% each) on a bank loan for the business on or about March 24, 2001 in the principal amount of $45,066.00. Due to the failure of the business, plaintiffs paid on this loan personally in the amount of $48,161.88 including interest. As a co-guarantor, the Court finds that defendant Benjamin Beverly is jointly responsible for the March 24, 2001 bank loan and therefore liable to the plaintiffs for one half of the amount paid by them.

Beverly filed a motion for a new trial or, in the alternative, to amend the judgment. The circuit court denied the motion pursuant to

the order entered on July 20, 2011. This appeal followed.

## III.

### Standard of Review

■ Syllabus point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), holds:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Heitz v. Clovis*, 213 W.Va. 197, 578 S.E.2d 391 (2003). *See also*, syl. pt. 1, *Waddy v. Riggleman*, 216 W.Va. 250, 606 S.E.2d 222 (2004) (Appellate review of an order granting or denying a motion for judgment as a matter of law in a bench trial is *de novo*.)

■ The standard of review concerning a ruling on a motion for a new trial is very similar. In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), this Court stated:

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*In accord, Stevenson v. Independence Coal Company, Inc.*, 227 W.Va. 368, 374, 709 S.E.2d 723, 729 (2011).

## IV.

### Discussion

Beverly contends that the judgment entered against him should be set aside because, as a guarantor on the March 24, 2001, commercial loan to B & T Services, Inc., his liability was to the lender, Community Trust Bank, and not to the respondents. In the alternative, Beverly contends that, inasmuch as he was one of three guarantors on the loan, the judgment directing his contribution should have been $16,053.96 (one third of the $48,161.88 paid by the respondents) rather than $24,080.24 (one half of the amount paid by the respondents).

On the other hand, the respondents assert that Beverly was a family friend who placed half ownership of the corporation in his wife Sue's name because of his past business failures. According to the respondents, following Beverly's divorce, Beverly was, nevertheless, credited with one half the value of the corporate assets and was entitled to one half of the profits. When B & T Services, Inc., failed, Beverly denied financial responsibility for the affairs of the corporation, and the respondents satisfied the debts, including repayment of the March 24, 2001, loan, from their own funds. Consequently, the respondents ask this Court to affirm the $24,080.24 judgment.

Upon review, it is undisputed that Beverly was never a formal owner of B & T Services, Inc. The circuit court found that Beverly did not receive stock when the corporation was created, and no determination has been made concerning whether Sue transferred her 50 shares to Beverly following the divorce. The respondents, however, do not assert that Beverly's liability arose from the corporation *per se*, either through stock ownership or by piercing the corporate veil. *See*, syl. pt. 10, *Sanders v. Roselawn Memorial Gardens*, 152 W.Va. 91, 159 S.E.2d 784 (1968) (The corporate form may be disregarded to avoid unjust consequences.). However, correctly focusing on Beverly as a joint guarantor on the March 24, 2001, loan, the respondents assert that their right to seek contribution, and the extent thereof, is evidenced by the guaranty itself, in conjunction with the abject failure and closure of B & T Services, Inc.

In that assertion, the respondents' reliance upon equitable principles is warranted. Although the respondents paid the 2001 promissory note without a judgment having been entered against the corporation or against them personally, they refer this Court to the reference to equity set forth in *W.Va.Code,*

45–1–6 [1923]. That statute, found in chapter 45 entitled "Suretyship and Guaranty," provides:

> If the principal debtor be insolvent, any surety or guarantor (or his committee, personal representative or heir) against whom a judgment or decree has been rendered on the contract in which he was surety or guarantor, may obtain a judgment or decree by motion, in the court in which such judgment or decree was rendered, against any cosurety or coguarantor (or his committee, personal representative or heir) *for his share, in law or equity*, of the amount for which the first-mentioned judgment or decree may have been rendered; and if the same has been paid, for such share of the amount so paid, with interest thereon from the time of such payment. (Emphasis added).

■ In the current matter, the insolvency of B & T Services, Inc., was undisputed. In the June 22, 2011, judgment order, the circuit court referred to the corporation as a failed business. The business was terminated as a result of debt, including a "massive" tax liability, and the equipment was sold. Rather than waiting to be personally sued on the March 24, 2001, loan by Community Trust Bank, the respondents acted in a timely manner and began repaying the debt from their own funds. A consideration of equity in terms of contribution is, therefore, strongly warranted in these circumstances. *See, Estate of Bayliss v. Lee*, 173 W.Va. 299, 303, 315 S.E.2d 406, 410 (1984) (Ordinarily, where two parties are co-obligors on a note and one party pays a disproportionate share of the joint obligation, he is entitled to contribution from his co-obligor.); syl. pt. 1, in part, *McKown v. Silver*, 99 W.Va. 78, 128 S.E. 134 (1925) (As a general rule, where one joint endorser pays off and discharges the obligation of all, he may enforce contribution against the others); 38A C.J.S. *Guaranty* § 161 (2008) (Where one of several guarantors pays more than his or her proportionate part of the principal's debt, he or she is entitled to contribution from his or her coguarantors of an amount sufficient to make the payment of all equal.); 38 Am.Jur.2d *Guaranty* § 101 (2010) (Some courts allow the presumption that co-guarantors are presumed to be equally bound to be rebutted, and the contribution shares to be adjusted, by evidence of unequal benefits received among them.).

■ Syllabus point 4 of *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), holds, in part: "The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation."

Thus, under the facts herein, the respondents, who have paid the entire debt, have a cause of action for contribution against Beverly, their co-guarantor. Even so, such an action may have limited results. As stated in *annot.*, 38 A.L.R.3d 680, 683 (1971):

> But this is obviously not an ideal solution for the surety or guarantor. He may well be able to bear the payment of his proportionate share of the common debt, and yet be seriously inconvenienced and even ruined financially by having to pay the entire debt and then sue for contribution. Furthermore, his cosureties or coguarantors may take steps to convey away their property or otherwise render themselves judgment-proof before legal action can be taken against them.[1]

Here, Beverly was directly involved with the respondents in the formation of B & T Services, Inc., but, as he acknowledged during the bench trial, declined ownership because his prior businesses had tax debts and other failures. Half ownership of the corporation was placed in his wife Sue's name, and she was so "distant from the operations and business" of B & T Services, Inc., that the circuit court dismissed the respondents' claim against her. Benjamin Beverly and Sue contributed to the initial $100,000 start-up money for the corporation through the placing of

---

1. The full citation of this annotation is Roland F. Chase, Annotation, *Right of Guarantor or Surety, in Order to Avoid Paying Amount in Excess of His Proportionate Share, to Compel Coguarantors or Cosureties to Pay Their Share to Creditor*, 38 A.L.R.3d 680, 683 (1971).

a trust deed on their residence. Sue indicated through her testimony that, prior to the 1997 divorce, she and Beverly intended to share her half of the corporate profits. The fact that B & T Services, Inc., was never able to distribute profits is of no moment.

Beverly was never a mere employee of B & T Services, Inc. He worked in the business on a daily basis, made management decisions, handled the corporation's routine financial matters and was paid for his services. Moreover, Beverly was a guarantor on the November 1999 commercial loan as well as the March 24, 2001, commercial loan.

Looking at these circumstances in the context of contribution, it is clear that Beverly's involvement in B & T Services, Inc., exceeded that of an employee or even a manager of the corporation, especially since the parties, at all times, expected him to share in the profits. The respondents and Beverly each became a guarantor of 100% of the promissory note relating to the March 24, 2001, loan. At that time, the corporation was dramatically failing, and the respondents paid the note from their own funds in the total amount of $48,161.88. Although the respondents consistently made payments, the loan was not repaid until April 2009. When the business began, the respondents were 50% stock owners, and Sue received 50%. Although there were three guarantors with regard to the 2001 loan, the circuit court properly determined that Beverly should pay the respondents $24,080.94. This Court concludes that the circuit court's ruling of a one half, rather than a one third, contribution by Beverly is protected by "the parameters of sound discretion." *Parker v. Knowlton Construction Company*, 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).

## V.

### Conclusion

The denial of Beverly's motion for a new trial should not be disturbed. Consequently, the July 20, 2011, order of the Circuit Court of Mingo County is affirmed.

**Affirmed.**

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, J., dissenting:

(Filed Nov. 7, 2012)

In the name of "equity," the Majority confuses well-established guaranty law, reaching a confounding result. Historically, "[t]he purpose of a loan guaranty is to assure the lender that, in the event the borrower defaults, the lender will have someone to look to for reimbursement." 38A C.J.S. *Guaranty* § 161 (2008). "[A] guarantor's liability does not begin until the principal debtor is in default." Black's Law Dictionary 724 (8th ed.2004). The relationship between a guarantor and lender is collateral to the relationship between the lender and the borrower. *See* Black's Law Dictionary 1482 (8th ed.2004) ("[T]he contract of the guarantor is his own separate undertaking, in which the principal does not join.").

With its holding, the Majority's opinion now establishes a right by which a guarantor may obtain contribution from a co-guarantor even though there has been no default by the principal on the loan. The Majority relies, I submit, on an inaccurate reading of our law and a selective consideration of the facts.

The Majority begins its analysis by quoting W. Va.Code § 45–1–6 (1923):

If the principal debtor be insolvent, any surety or guarantor (or his committee, personal representative or heir) **against whom a judgment or decree has been rendered on the contract** in which he was surety or guarantor, may obtain a judgment or decree by motion, in the court in which such judgment or decree was rendered, against any cosurety or coguarantor (or his committee, personal representative or heir) *for his share, in law or equity,* of the amount for which the first-mentioned judgment or decree may have been rendered; and if the same has been paid, for such share of the amount so paid, with interest thereon from the time of such payment.

(Italicized emphasis by the Majority, boldface emphasis original to this dissent). The Majority seizes on the "equity" language contained in W. Va.Code § 45–1–6, but gives no

effect to the requirement that a judgment or decree must be rendered on the contract, as a result of the principal's default, before a co-guarantor can be found liable in law or equity. By doing so, the Majority overlooks a necessary statutory prerequisite to a consideration of equity which is simply *not* present in this case. Prior to any consideration of equity, the statute specifically sets forth that a co-guarantor has no obligation to pay anything to anyone unless the principal debtor is in default and "a judgment or degree has been rendered on the contract." In the case *sub judice,* the loan was completely repaid. The principal did not default on this loan, and no judgment or decree was entered on the loan.

Throughout its opinion, the Majority describes B & T Services as having numerous debts, including tax liability, making the business insolvent. B & T Services never filed for bankruptcy and was never found, as a matter of law, unable to pay its debts. The Majority's focus on the other debts of B & T Services is completely *irrelevant.* Mr. Beverly cannot be responsible for those debts because he was not a shareholder of the business. By focusing on B & T Service's other debts, the majority misses the very narrow issue in this case: whether a guarantor can be found liable for contribution to a co-guarantor on a loan that has been completely repaid and was never in default. Prior to the Majority's decision in this case, the answer to that question was, "No."

The Majority's reference to secondary sources and case law regarding contribution is misplaced. Absent from this analysis is a recognition that in each of these sources, there is no right to contribution *unless the principal has defaulted on the loan* and a *judgment or decree has been entered* to that effect. 38A C.J.S. *Guaranty* § 161 (2008) (referring only to cases in which the principal defaulted on a loan); 38 Am.Jur.2d *Guaranty* § 101 (2010) (referring only to cases in which payments made by co-guarantors were made upon default of the principal); *Estate of Bayliss v. Lee,* 173 W.Va. 299, 303, 315 S.E.2d 406, 410 (1984) (dealing with payment of an unpaid debt following bankruptcy proceedings); *McKown v. Silver,* 99 W.Va. 78, 128 S.E. 134 (1925) (dealing with a note upon which the principals had defaulted). There is no support in these sources for the Majority's proposition that a co-guarantor's right to contribution exists where there has been no default.

Prior to this case, a co-guarantor could not be held liable in West Virginia for a debt unless the principal was unable to pay the loan and a judgment or decree was entered such that the lender could collect from the guarantor(s). To the extent that the Majority opinion now holds otherwise and creates unfortunate new legal precedent in doing so, I dissent.