624 S.E.2d 710

Justin D. BAILEY, Plaintiff
Below, Appellant,

v.

MAYFLOWER VEHICLES SYSTEMS,
INC., d/b/a South Charleston Stamping
and Manufacturing Defendant Below,
Appellee.

No. 32584.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 4, 2005.

Filed: Dec. 1, 2005.

Lawrence B. Lowry, Esq., Barrett, Chafin, Lowry & Amos, Huntington, for Appellant.

Mark A. Atkinson, Esq., Paul L Frampton, Jr., Esq., Atkinson Mohler & Polak, PLLC, Charleston, for Appellee.

The Opinion of the Court was delivered PER CURIAM.

Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

## PER CURIAM.

This case is before the Court on appeal from the June 24, 2004, Order of the Circuit Court of Kanawha County granting Appellee's motion for judgment as a matter of law as filed according to Rule 50 of the West Virginia Rules of Civil Procedure. This Court has before it the petition for appeal, the response, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the circuit court did not err in granting Appellee's motion for judgment as a matter of law. Accordingly, this Court affirms the June 24, 2004, Order of the circuit court.

### I.

### FACTS

The Appellant in this case, Justin D. Bailey (hereinafter, "Bailey"), worked as a manufacturing associate and later as a team leader for the Appellee, South Charleston Stamping and Manufacturing (hereinafter, "SCSM"), beginning in August of 1991. On June 19, 1994, Bailey injured his neck, right shoulder, and arm while working as a team leader for SCSM. He missed four days of work as a result of his injury and filed a claim before the Workers' Compensation Division (hereinafter, "WCD") which resulted in his being awarded temporary total disability benefits. Bailey subsequently reinjured his neck, right shoulder, and arm while at work on June 6, 1995, and missed nine days of work. Again, he filed a claim for workers' compensation benefits and received temporary total disability benefits.

Following his return to work, however, Bailey continued to experience pain, stiffness, and numbness in his neck and arm. On February 28, 1996, Dr. Thomas Dannals (hereinafter, "Dr. Dannals") took Bailey off work and prescribed a course of treatment and rehabilitation. Bailey's workers' compensation claim was then reopened, and he began receiving benefits. On September 5, 1996, Bailey's employment with SCSM was terminated because his absence had exceeded the maximum allowable by plant policy; however, he was soon thereafter reinstated after

he called SCSM and explained that he was off work because of his work-related injury, for which he was receiving workers' compensation benefits.

On December 11, 1996, Dr. John Kroening (hereinafter, "Dr. Kroening"), examined Bailey on behalf of the WCD. Dr. Kroening determined that Bailey had reached his maximum degree of medical improvement. Accordingly, Bailey was awarded a 5% permanent partial disability award on January 20, 1997, which he received until April of 1997.[1]

On February 19, 1997, Bailey was asked by SCSM's assistant human resources manager to report to the plant by March 5, 1997, with a list of restrictions and a return-to-work date. Bailey called SCSM and informed the assistant human resources manager that he had not been told by his doctor when he could return to work and that he had not yet received a list of restrictions. Bailey was asked to keep SCSM apprized of his condition, but he did not.

On May 26, 1998, Bailey received a certified letter dated May 22, 1998, from Tonya Trembly (hereinafter, "Trembly"), benefits coordinator for SCSM, requesting that Bailey contact her about his employment within ten days. The letter stated that if she did not hear from Bailey in that time, Trembly would assume that he had voluntarily resigned his position. On June 3, 1998, Bailey attempted to contact Jana Dawson (hereinafter, "Dawson") and Julian O'Dell (hereinafter, "O'Dell"), but he was able only to reach their voice mail.[2] Soon thereafter, Bailey received a letter of termination dated June 2, 1998, which was signed by O'Dell, the new human resources manager.

Bailey was released by his personal physician, Dr. Dannals, to return to work on October 6, 1998. Bailey called O'Dell and asked if he could return to work at SCSM. By letter dated December 17, 1998, O'Dell informed Bailey that there was not a manufacturing team leader position available, but that there was an associate position open. Bailey was told, however, that he would need

to undergo a Functional Capacity Evaluation (hereinafter, "FCE") in order to be considered for that position. Additionally, Bailey was asked to speak to a benefits representative about certain health insurance claims that apparently should have been or were paid by workers' compensation. Bailey completed and passed the FCE on December 30, 1998, but failed to resolve the insurance issue.

O'Dell again contacted Bailey by letter on May 10, 1999, and asked him to set up an appointment to discuss the FCE and the insurance issue. Bailey asserts that in the ensuing period of time, he attempted several times to contact O'Dell, while SCSM asserts that it was unable to contact Bailey. On July 12, 1999, Dawson attempted to contact Bailey by letter, again requesting that he contact O'Dell. Bailey made no further attempt to contact SCSM. By this point, Bailey had been away from his employment since February 28, 1996, despite having been determined by Dr. Kroening to have reached his maximum degree of medical improvement on December 11, 1996.

On July 10, 2002, Bailey brought the instant action alleging discrimination claiming that the termination of his employment constituted discrimination under West Virginia Code §§ 23–5A–1, 23–5A–2, 23–5A–3(a), and 23–5A–3(b).[3] The matter went to trial on November 3, 2003. Following Bailey's case-in-chief, SCSM moved for judgment as a matter of law under Rule 50 of the West Virginia Rules of Civil Procedure as to each of Bailey's claims. The circuit court found that Bailey had failed to meet his burden of proof under each of his claims under West Virginia Code §§ 23–5A–3(a), 23–5A–3(b), and 23–5A–1 and granted SCSM's motions for judgment as a matter of law.

## II.

### STANDARD OF REVIEW

We have held that " '[t]he appellate standard of review for the granting of a

---

**1.** Bailey attempted to reopen his claim for temporary total disability benefits thereafter, but was unsuccessful.

**2.** Bailey asserts that the delay in contacting SCSM was due to the fact that Bailey had been

trying to reach his attorney, who was out of the office for a week.

**3.** Bailey subsequently and voluntarily withdrew his claim under West Virginia Code § 23–5A–2 before trial.

motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is *de novo*. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.' Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996)." Syl. Pt. 5, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002). We review this case accordingly.

## III.

### DISCUSSION

Bailey asserts that the circuit court erred in granting SCSM's motions for judgment as a matter of law. SCSM, however, asserts that when one assesses the law as it applies to the facts in this case, only one reasonable conclusion could be drawn as to the verdict. We will address each of Bailey's three claims in turn.

#### A. West Virginia Code § 23-5A-1

West Virginia Code § 23-5A-1 (1978) states that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive [workers' compensation benefits]." Bailey asserts that, at trial, he presented evidence that he was discriminated against by SCSM when he sought re-employment after he was released to return to work. Specifically, Bailey points to the deposition and trial testimony of O'Dell that requests to return to work are handled differently for someone who is injured at work as opposed to someone who is not injured at work. However, the record reveals that O'Dell explained that this difference arises because a return from a workers' compensation absence is largely governed by the WCD; whereas, a return from a non-work-related injury is handled by a third party administrator. Bailey further asserts that disparate treatment is also demonstrated in the fact that he was required to undergo a FCE

before he could be considered for reinstatement while new hires are not required to undergo a FCE. Bailey asserts that based upon these things, there is significant evidence from which a jury could conclude that SCSM discriminated against Bailey; therefore, the court erred in granting judgment as a matter of law in regard to his claim under West Virginia Code § 23-5A-1.

SCSM and the circuit court disagree and point to this Court's decision in *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991). In Syllabus Point 1 of *Powell*, we held that:

[i]n order to make a *prima facie* case of discrimination under W. Va.Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va.Code, 23-1-1, et seq.; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

SCSM asserts that Bailey failed to meet the third prong of the *Powell* test when he presented his case at trial. The circuit court agreed and held that Bailey was not terminated because he filed a workers' compensation claim, but because he violated SCSM's neutral attendance policy and was unable to provide SCSM with a return-to-work date. The court pointed out that Bailey's absence had exceeded 800 days when he was terminated. The court further pointed out that Bailey had not returned to work in the eighteen months since he was released to work again.

We recognized in *Powell* that:

[b]ecause of the usual lack of direct evidence, courts have looked to a variety of factors [in determining whether a firing was retaliatory]. Proximity in time of the claim and the firing is relevant, of course. Evidence of satisfactory work performance and supervisory evaluations before the accident can rebut an employer's claim of poor job performance. Any evidence of an actual pattern of harassing conduct for submitting the claim is very persuasive.

*Id.* at 704, 403 S.E.2d at 721. (Citations omitted.)

We further recognized that "[w]here the employer has a neutral absenteeism policy that permits discharge of an employee who is absent for a specific period of time, courts have generally held that termination of employment under such a policy does not violate a compensation antidiscrimination statute." *Id.* at 705, 403 S.E.2d at 722.

█ We find that, in the present case, Bailey's termination was remote in time not only to the time of the filing of his workers' compensation claim, but also to his last receipt of workers' compensation benefits. There is likewise no evidence of a pattern of harassing conduct for Bailey's filing of a workers' compensation claim. While we cannot say whether SCSM's absenteeism policy is neutral because the policy is not presented in the record before us, we do observe that the period of absenteeism by Bailey after reaching his maximum degree of medical improvement strains the concept of reasonability. More importantly, Bailey has presented no evidence that he was terminated for any reason other than his absenteeism. Therefore, we find that Bailey has failed to meet the requirements of West Virginia Code § 23–5A–1.

### B. West Virginia Code § 23–5A–3(a)

West Virginia Code § 23–5A–3(a) (1990) states that:

[i]t shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense. A separate dischargeable offense shall mean misconduct by the injured employee wholly unrelated to the injury or the absence from work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

Bailey asserts that he produced evidence that he was an injured employee off of work due

to a compensable injury and that his personal physician had not released him to return to work when he was terminated. However, SCSM points out that Bailey was not receiving and was not eligible to receive temporary total disability benefits at the time of his termination. In fact, the WCD had repeatedly declined to reopen Bailey's claim. The court below agreed with SCSM, and so do we.

█ Bailey seeks to have this Court interpret West Virginia Code § 23–5A–3(a) so broadly as to make it practically boundless. Although Bailey would have us believe that he was "off work due to a compensable injury" at the time of his termination, the record demonstrates that he had been released to return to work and was, in the opinion of the WCD, no longer eligible to receive temporary total disability benefits. Therefore, Bailey does not meet the requirements of West Virginia Code § 23–5A–3(a).

### C. West Virginia Code § 23–5A–3(b)

█ Finally, West Virginia Code § 23–5A–3(b) (1990) states that:

It shall be a discriminatory practice within the meaning of section one of this article for an employer to fail to reinstate an employee who has sustained a compensable injury to the employee's former position of employment upon demand for such reinstatement provided that the position is available and the employee is not disabled from performing the duties of such position. If the former position is not available, the employee shall be reinstated to another comparable position which is available and which the employee is capable of performing. A comparable position for the purposes of this section shall mean a position which is comparable as to wages, working conditions and, to the extent reasonably practicable, duties to the position held at the time of injury. A written statement from a duly licensed physician that the physician approves the injured employee's return to his or her regular employment shall be prima facie evidence that the worker is able to perform such duties. In the event that neither the former position nor a comparable position is

available, the employee shall have a right to preferential recall to any job which the injured employee is capable of performing which becomes open after the injured employee notifies the employer that he or she desired reinstatement. Said right of preferential recall shall be in effect for one year from the day the injured employee notifies the employer that he or she desires reinstatement: Provided, That the employee provides to the employer a current mailing address during this one year period.

Under this statute, Bailey has a burden of proving through competent medical evidence that he has recovered from his compensable injuries and is capable of returning to work and performing his job duties. The circuit court found that Bailey did not meet this burden. Based upon the record, we agree.[4]

■ We believe that the legislature's intent in passing West Virginia Code § 23–5A–3(b) was to protect workers' compensation claimants rather than to provide a mechanism for claimants to unreasonably delay their return to work, as was the case here. We cannot conceive that the legislature sought to sanction an employee waiting some two years after being found to have reached his maximum medical improvement to seek reinstatement to his former position.[5] Furthermore, an employer cannot be held to a duty to honor an employee's rights when, as here, an employee does not avail himself or herself of the position that was open and offered to him or her.[6] Therefore, we agree with the circuit court that Bailey failed to prove that he meets the requirements of West Virginia Code § 23–5A–3(b).

4. Bailey presented a note from Dr. Dannals stating, in part, that Bailey had recovered from carpal tunnel syndrome. However, carpal tunnel syndrome was not a compensable injury in this case, and there is no evidence in the record, beyond Dr. Dannals' bare statement, that it was in any way related to the compensable injury. Furthermore, Dr. Dannals' note does not make clear whether Bailey had recovered from his compensable injuries such as would allow him to return to work and perform his job duties.

5. We save for another day, however, a determination of what constitutes a reasonable period of time during which an employee's rights are protected under West Virginia Code § 23–5A–3(b).

IV.

CONCLUSION

Accordingly, having found that the evidence before the Court is insufficient to meet Bailey's burdens under West Virginia Code §§ 23–5A–1, 23–5A–3(a), and 23–5A–3(b), we find that the Circuit Court of Kanawha County did not err in granting SCSM's motions for judgment as a matter of law. Therefore, the court's decision is affirmed.

Affirmed.

STARCHER, J., dissenting.

I dissent to the circuit court's granting of judgment as a matter of law in this case. I would have reversed the circuit court's decision, and remanded the case to let a jury hear and assess the plaintiff's claims.

The plaintiff, Justin Bailey, laid out a clear case that he had been injured on the job, and kept aggravating his injury. Ultimately, he stopped working and filed for workers' compensation benefits on April 1, 1996, and began receiving benefits in May. But in September 1996, he discovered that his employer, defendant Mayflower Vehicle Systems, had fired him for "excessive absences." After talking with the personnel director, the employer reinstated him to his job.

The plaintiff was routinely seeing his own doctor while he was recuperating. But in December 1996 he was seen, at the request of his employer, by a doctor chosen by the folks at the Workers' Compensation Division. The doctor chosen by the Division stated that the plaintiff had reached his maximum degree of medical improvement. In January

6. Bailey was first informed of the manufacturing associate opening on or about October 27, 1998. The record is clear that SCSM repeatedly asked Bailey to come to the plant to resolve certain health insurance issues before the matter of his reinstatement could progress any further, but he did not do that. Instead, in May of 1999, he informed SCSM that he did not intend to contact them further. Rather, he said, SCSM would have to call him. In that instant, Bailey stopped pursuing reinstatement and was no longer protected by West Virginia Code § 23–5A–3(b).

1997, the plaintiff's temporary benefits were cancelled, and he received a permanent partial disability award and a referral to a rehabilitation counselor.

The plaintiff's personal physician, however, did not believe the plaintiff's injury was healed and refused to allow the plaintiff to return to work. The plaintiff even began paying for his own physical therapy and "work hardening," but stopped because of the cost and because the Workers' Compensation Division refused to assist in paying for these treatments. The defendant employer gave the plaintiff additional time—his own time, without a salary and without any workers' compensation benefits—to recover.

But the defendant employer finally demanded that the plaintiff return to work anyway. When he didn't, the employer declared that the plaintiff had "voluntarily quit his job." The employer later offered the plaintiff a "consolation prize" in the form of a job with less responsibility and lower pay, but premised the job on a functional capacity evaluation. The plaintiff passed the evaluation, but the employer claimed it never received the evaluation results, and later "gave up" on offering the plaintiff a job.

This Court has long held that "[u]pon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767 (1932).

The circuit court in this case failed to consider every reasonable and legitimate inference fairly rising from the testimony in favor of the plaintiff. Instead, the circuit court and the majority opinion viewed the facts in a light most favorable to the defendant, and interposed their own interpretation of the plaintiff's evidence so as to find that the plaintiff had failed to meet his burden of proof. A jury could have inferred from the defendant's actions that the defendant intended to get rid of the plaintiff because he had filed a workers' compensation claim, and because he missed work as a result of his work-related injury. The circuit court sim-

ply decided a fact issue which the plaintiff was entitled to have a jury decide. I therefore believe that the circuit court erred in granting judgment as a matter of law to the defendant on each of the plaintiff's claims.

I respectfully dissent, and I am authorized to state that Chief Justice Albright joins in this dissent.