IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-0389

_____

FILED

October 7, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JWCF, LP, (formerly known as Baker Installations, Inc.),
a foreign corporation conducting business in West Virginia,
Petitioner

v.

STEVEN FARRUGGIA,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster, Judge
Civil Action No. 08-C-720

AFFIRMED

_____

Submitted: September 10, 2013
Filed: October 7, 2013

Barbara G. Arnold, Esq.                          Stephen P. New, Esq.
MacCorkle, Lavender & Sweeney, PLLC              Beckley, West Virginia
Charleston, West Virginia                        Attorney for Respondent
Attorney for Petitioner

The Opinion of the Court was delivered PER CURIAM
Chief Justice Benjamin reserves the right to file a concurring and/or dissenting opinion

SYLLABUS BY THE COURT

1.  "'We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.'  *Tennant v. Marion Health Care Foundation, Inc*., 194 W.Va. 97, 459 S.E.2d 374 (1995)."  Syl. Pt. 2, *Beverly v. Thompson*, 229 W.Va. 684, 735 S.E.2d 559 (2012).

2.  "'[T]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.'  Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp*., 159 W.Va. 621, 225 S.E.2d 218 (1976)."  Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc*., 223 W.Va. 209, 672 S.E.2d 345 (2008).

3.  "In order to make a prima facie case of discrimination under W.Va. Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va. Code, 23-1-1 et seq.; and (3) the filing of a workers' compensation claim was a significant factor in the

employer's decision to discharge or otherwise discriminate against the employee." Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

4. "When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act." Syl. Pt. 2, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

5. "'[N]ew points of law . . . will be articulated through syllabus points as required by our state constitution.' Syllabus Point 2, in part, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)." Syl. Pt. 13, *State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003).

6. "'"'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.' Syllabus, *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85 [, 163 S.E. 767 (1932) ]." Point 1, Syllabus, *Jenkins v. Chatterton*,

143 W.Va. 250[, 100 S.E.2d 808](1957).' Syl. Pt. 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978)." Syl. Pt. 2, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

7. "In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." Syl. Pt. 4, *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895).

8. "When this Court, or a trial court, reviews an award of punitive damages, the court must first evaluate whether the conduct of the defendant toward the plaintiff entitled the plaintiff to a punitive damage award under *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895), and its progeny. . . ." Syl. Pt. 6, in part, *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 694 S.E.2d 815 (2010).

9. "'It will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given.' Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952)." Syl. Pt. 1, *Moran v. Atha Trucking, Inc*., 208 W.Va. 379, 540 S.E.2d 903 (1997).

10. "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

11. "Factors to be considered in determining whether the failure to supplement discovery requests under Rule 26(e)(2) of the Rules of Civil Procedure should require exclusion of evidence related to the supplementary material include: (1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of that party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded." Syl. Pt. 5, *Prager v. Meckling*. 172 W.Va. 785, 310 S.E.2d 852 (1983).

12. "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

Per Curiam:

This is an appeal by JWCF, LP, formerly Baker Installations, Inc., from a jury verdict in the Circuit Court of Kanawha County, West Virginia, in favor of the respondent, Mr. Steven Farruggia, a former JWCF employee, in this workers' compensation employment discrimination case. The circuit court denied JWCF's motions for judgment as a matter of law and a new trial, and JWCF appeals to this Court. Upon review of the appendix record, briefs, arguments of counsel, and applicable legal authority, this Court affirms the decisions of the circuit court.

I. Factual and Procedural History

JWCF is a telecommunications company performing contract work in this state. Mr. Farruggia began employment with JWCF as a cable installer in 2005. He was thereafter terminated for refusing to take a drug test in 2006 but was re-hired one month later by JWCF. On February 14, 2007, Mr. Farruggia suffered a compensable back injury and later underwent a surgical procedure.

Mr. Farruggia was released to light duty work by his physician, Dr. Christopher Grose, on August 23, 2007, and Mr. Farruggia returned to work on September 19, 2007, as a "progress evaluator." According to the testimony adduced at trial, this was designed as

1

a "strictly temporary" light duty position, and written notice was given to Mr. Farruggia that the position of "progress evaluator" would be eliminated when he was able to return to his regular duty position.

On October 2, 2007, Dr. Saghir Mir found that Mr. Farruggia was not yet at maximum medical improvement and deferred examination for another three months. Mr. Farruggia had refused physical therapy in September 2007, indicating that he was physically unable to participate in it. A work log dated October 30, 2007, indicated that Mr. Farruggia was still performing only his light duty work and was not installing cable by himself. By November 2007, Mr. Farruggia contends that he had begun performing his prior job of installing cable, without assistance.[1]

---

[1]The appendix record references the work logs ("truck reports") of November 20, 2007, and November 23, 2007, and the absence of signatures on those records of anyone working with Mr. Farruggia. Mr. Farruggia contends that the absence of any additional signatures indicates that he was working without assistance on those dates, and he testified that he was working independently and performing his former job of installing cable on those dates. He testified in extensive detail about his performance of the job duties on November 20, 2007, and also referenced his independent work on November 23, 2007. The record does not reflect that the existence or accuracy of such work logs was directly contradicted by any evidence introduced by JWCF. A lead technician for JWCF, Mr. Jason Armstrong, testified that Mr. Farruggia was working unassisted at that time. However, JWCF introduced testimony of Mr. Brent Cheesebrew, Area Manager, indicating that the absence of signatures did not prove with certainty that Mr. Farruggia was working without any assistance.

On November 12, 2007, Mr. Farruggia agreed to a settlement of $20,000 for his worker's compensation claim. On November 29, 2007, he was terminated. He requested employment again on February 14, 2008, but JWCF did not consider him for further employment. Mr. Farruggia filed a civil action against JWCF on April 11, 2008, asserting discrimination in violation of West Virginia Code §§ 23-5A-1 et seq. and asserting that his receipt of a workers' compensation settlement was a significant factor in JWCF's decision to discharge him.[2]

During trial, Mr. Farruggia testified that he was specifically informed by his supervisor, Mr. Austin Cantrell, that his termination was premised upon his workers' compensation settlement.[3] Mr. Farruggia's testimony on this matter was corroborated by the testimony of a lead technician at JWCF, Mr. Jason Armstrong. Mr. Armstrong testified that he was present when Mr. Farruggia was informed of the termination and indicated that Mr. Farruggia had been told that the termination was indeed related to the workers' compensation settlement.

---

[2]The complaint had also originally alleged a violation of the West Virginia Human Rights Act, but that claim was voluntarily dismissed prior to trial.

[3]Specifically, Mr. Farrruggia testified that Mr. Cantrell told him that he was being terminated because he had settled the workers' compensation claim.

Ms. Cherrie Lyttle, claims handler for Mr. Farruggia's workers' compensation claim, also testified regarding the relationship between Mr. Farruggia's workers' compensation settlement and the termination. Ms. Lyttle explained that Cinnomin Yohe, a JWCF manager, had informed Ms. Lyttle that JWCF's policy was not to settle workers' compensation claims and that Mr. Farruggia would be terminated as soon as he signed the agreement.

JWCF introduced witnesses indicating that no connection existed between the workers' compensation settlement and the termination. According to JWCF's theory of defense, the light duty position had simply been eliminated and Mr. Farruggia had not demonstrated, by competent medical evidence, that he was capable of returning to his former position as a cable installer. The jury found for Mr. Farruggia, awarding him $64,691 in back pay; $150,000 in front pay; $15,000 for aggravation, inconvenience, humiliation, embarrassment, and loss of enjoyment of life; and $30,000 in punitive damages.

On September 29, 2010, JWCF moved for a new trial, contending that the jury verdict was contrary to the law; that Mr. Farruggia failed to timely disclose that he had taken a job with Walmart three weeks prior to trial; that evidence relating to Mr. Farruggia's prior termination and rehire was improperly excluded; that the jury should not have been instructed on the issue of punitive damages; that evidence relating to Mr. Farruggia's family difficulties

4

should have been excluded; and that the overall effect of the circuit court's rulings served to mislead the jury. The circuit court refused to grant a new trial, and this appeal followed.

JWCF's assignments of error on appeal essentially restate the grounds it asserted in its motion for a new trial. Specifically, JWCF contends that the circuit court erred by failing to grant judgment as a matter of law for JWCF; denying JWCF's motion for a new trial; giving a punitive damage instruction to the jury; refusing to exclude Mr. Farruggia's economic expert; excluding evidence of lenient treatment of Mr. Farruggia in connection with his prior rehiring; admitting evidence of Mr. Farruggia's family situation; and committing cumulative error. We address those claims below.

## II. Standard of Review

The circuit court's denial of JWCF's motion for judgment as a matter of law is reviewed *de novo* by this Court. *Peters v. Rivers Edge Mining, Inc.*, 224 W. Va. 160, 172, 680 S.E.2d 791, 803 (2009). With regard to JWCF's request for a new trial, the following standard of review has been repeatedly enunciated:

> "We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

Syl. Pt. 2, *Beverly v. Thompson*, 229 W.Va. 684, 735 S.E.2d 559 (2012).  In similar fashion,

this Court also stated as follows in syllabus point two of *Estep v. Mike Ferrell Ford*

*Lincoln–Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008):

> "[T]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence."  Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

With those standards of review as guidance, we address the assignments of error alleged by

JWCF.


III.  Discussion

A.  Denial of Judgment as a Matter of Law

JWCF first contends that the circuit court erred in denying its motion for

judgment as a matter of law.[4]  In this vein, JWCF contends that the evidence submitted to the

jury was insufficient to demonstrate that it violated West Virginia Code § 23-5A-3(b) (2010).

At the outset of this discussion, it is imperative to note that Mr. Farruggia founded his

discrimination claim on both West Virginia Code § 23-5A-1 (2010) and West Virginia Code

§ 23-5A-3(b).

---

[4]*See* W. Va. R. Civ. P. 50(a)(1) (permitting a party to move for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.").

6

West Virginia Code § 23-5A-1, the more general of the two statutes, provides that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter." With regard to the evidence necessary to prove a violation of West Virginia Code § 23-5A-1, this Court explained as follows in syllabus point one of *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991):

> In order to make a prima facie case of discrimination under W.Va.Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23-1-1 et seq.; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Once a prima facie case has been established by the claimant, "the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act." Syl. Pt. 2, *Powell*, 184 W.Va. at 701, 403 S.E.2d at 718.

The other statute upon which Mr. Farruggia based his discrimination allegation was West Virginia Code 23-5A-3(b), which provides:

> It shall be a discriminatory practice within the meaning of section one of this article for an employer to fail to reinstate an employee who has sustained a compensable injury to the employee's former position of employment upon demand for

7

such reinstatement provided that the position is available and the employee is not disabled from performing the duties of such position. If the former position is not available, the employee shall be reinstated to another comparable position which is available and which the employee is capable of performing. A comparable position for the purposes of this section shall mean a position which is comparable as to wages, working conditions and, to the extent reasonably practicable, duties to the position held at the time of injury. A written statement from a duly licensed physician that the physician approves the injured employee's return to his or her regular employment shall be prima facie evidence that the worker is able to perform such duties. In the event that neither the former position nor a comparable position is available, the employee shall have a right to preferential recall to any job which the injured employee is capable of performing which becomes open after the injured employee notifies the employer that he or she desired reinstatement. Said right of preferential recall shall be in effect for one year from the day the injured employee notifies the employer that he or she desires reinstatement: Provided, That the employee provides to the employer a current mailing address during this one year period.

The jury was properly instructed on both discrimination statutes, but the jury verdict form, to which no objection was apparently raised, did not clearly distinguish between the two theories of recovery or identify the particular statute upon which the jury based its finding of discrimination.[5] This Court acknowledged the interplay between these two statutes in

_____

[5]The verdict form did provide the jury with the opportunity to answer two interrogatories related to this issue: (1) Do you find from a preponderance of the evidence that "retaliation for the Plaintiff's filing of a workers' compensation claim was a significant factor in the decision of the Defendant to discharge the Plaintiff?" and (2) Do you find from a preponderance of the evidence "that the Defendant failed to reinstate the Plaintiff to his former or comparable position with the Defendant?" The jury answered both queries in the affirmative. JWCF did not assign as error the failure of the verdict form to more precisely distinguish between the two theories of liability. *See* W. Va. R.

(continued...)

8

Civ. P. 49(b) (regarding "General Verdict Accompanied by Answer to Interrogatories"). While this verdict form did include the two rather generic questions related to liability issues, it is of little more value than a general verdict in ascertaining an specific findings of the jury. "The general verdict is as inscrutable and essentially mysterious as the judgment which issued from the ancient oracle of Delphi." *Skidmore v. Baltimore & Ohio R. R. Co.*, 167 F.2d 54, 60 (2d Cir.), *cert. denied*, 335 U.S. 816 (1948).

With respect to a general verdict, this Court has held that "[w]here a jury returns a general verdict in a case involving two or more liability issues and its verdict is supported by evidence on at least one issue, the verdict will not be reversed, unless the defendant has requested and been refused the right to have the jury make special findings as to his liability on each of the issues." Syl. Pt. 6, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert denied*, 469 U.S. 981 (1984). This Court also concluded in *Orr* that "[i]t is only when the trial judge is specifically requested by the defendant to submit special findings and refuses to do so, and on appeal we conclude that one of the causes of action given to the jury is insufficient as a matter of law, that a reversal will occur." 173 W.Va. at 350, 315 S.E.2d at 608. In syllabus point eleven of *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995), this Court stated: "Although it would be preferable to give special verdict forms in multiple theory employment discrimination cases, which would remove doubt as to the jury's consideration of any alternative basis of liability that does not have adequate evidentiary support, the refusal to do so does not provide an independent basis for reversing an otherwise valid judgment." This Court's reasoning in *Barefoot*, an opinion penned by Justice Cleckley, is particularly illuminating, as follows:

> What the defendant overlooks is that in cases such as this one the jury need not agree on a single legal theory or motive of intentional discrimination when more than one has been charged and submitted to it. The jury merely found the defendant guilty of intentional discrimination. Arguably, there was some evidence in support of all three motives. It certainly is not error to permit the plaintiff to use three different motives to prove the same thing, i.e., intentional discrimination. That is especially true when a jury could reasonably find, as in this case, that the adverse employment decision resulted from a combination of illegal motives.

(continued...)

9

*Peters*, stating that "both of these sections are codified within Article 5A of the West Virginia Code pertaining to 'Discriminatory Practices.' Because both of these provisions are part of the same body of law, they should be construed and applied consistently with one another." 224 W.Va. at 176, 680 S.E.2d at 807.

On appeal, JWCF argues that the evidence submitted by Mr. Farruggia did not support a discrimination claim under West Virginia Code § 23-5A-3(b) because Mr. Farruggia did not submit competent medical evidence indicating his ability to return to his former employment. That statute, however, does not *require* competent medical evidence. It simply states, as quoted above, that it is a discriminatory practice to fail to reinstate an employee to his former position if the position is available and the employee is "not disabled from performing the duties of such position." W. Va. Code § 23-5A-3(b). The statute does indicate that a "written statement from a duly licensed physician that the physician approves the injured employee's return to his or her regular employment shall be prima facie evidence that the worker is able to perform such duties." *Id.* It does not, however, limit a claimant's ability to establish a prima facie case with other evidence.

In addressing several allegations of discrimination in *Bailey v. Mayflower Vehicle Systems*, 218 W.Va. 273, 624 S.E.2d 710 (2005), this Court, by per curiam opinion,

---

[5](...continued)
*Id.* at 491, 457 S.E.2d at 168.

10

examined West Virginia Code § 23-5A-3(b) and found that an employer is not required to honor a claimant's rights to reinstatement where the claimant fails to "avail himself or herself of the position that was open and offered to him or her." 218 W. Va. at 278, 624 S.E.2d at 715. The *Bailey* Court also found that Mr. "Bailey stopped pursuing reinstatement and was no longer protected by West Virginia Code § 23-5A-3(b)." *Id.* at 278, n.6, 624 S.E.2d at 715, n.6. In discussing that statute, this Court also stated that Mr. "Bailey has a burden of proving through competent medical evidence that he has recovered from his compensable injuries and is capable of returning to work and performing his job duties." *Bailey*, 218 W.Va. at 277, 624 S.E.2d at 714. That statement, however, was not elevated to a syllabus point in the *Bailey* opinion and is not based upon any requirement included in the plain language of the statute. In fact, a clear reading of the statute indicates the contrary. Moreover, this Court has consistently explained that "'new points of law . . . will be articulated through syllabus points as required by our state constitution.' Syllabus Point 2, in part, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)." Syl. Pt. 13, *State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003). As the *Recht* Court articulated, "[i]f this Court were to create a new [point of law], it would do so in a syllabus point." 213 W. Va. at 471, 583 S.E.2d at 94.[6]

---

[6]The only other case relying on *Bailey* is factually distinguishable. In *Brown v. Beverly Enterprises - West Virginia, Inc.*, 2008 WL 4879415 (S.D. W.Va. 2008), the United States District Court for the Southern Distract of West Virginia addressed West Virginia Code § 23-5A-3(b) and noted the *Bailey* decision. The *Brown* court determined that "Ms. Brown was not able to perform" her duties at the time her employer terminated

(continued...)

In this case, while Mr. Farruggia did not submit a medical release indicating his ability to return to his full duties, and he contends that he recovered from his injury to the extent that he actually began performing his full duties.[7] He explained that he did not return to his physician to obtain additional guidance on his ability to work, stating as follows: "I didn't feel like that I really needed to, because at that time I was feeling good enough that I didn't have to go - - really have to go back to the doctors." Mr. Farruggia testified that he was engaged in his heavy-duty cable installation work prior to his termination on November

---

[6](...continued)
her. 2008 WL 4879415 at *7. The court based this conclusion upon the fact that although Ms. Brown claimed she was able to return to work, "she provide[d] no evidence to support this contention" and conceded that she could only work light duty. *Id.*

[7]Mr. Farruggia introduced evidence, through the "daily truck report" work logs, that he returned to his full-duty cable installation job and that he worked independently for two days in November 2007. An affidavit by Austin Cantrell, as Mr. Farruggia's supervisor, also indicates that Mr. Farruggia had returned to full-duty work. JWCF, however, responds to that evidence by contending that Mr. Farruggia had not been formally reinstated to his full-duty position and that he had not been medically released to perform such work. JWCF's brief references the fact that Mr. Farruggia had not "informed" JWCF of the return to full-duty work and had not "requested" a return to such work. In its reply brief to this Court, JWCF explains as follows:

> Even if it is presumed for the sake of argument that Mr. Farruggia actually performed what had been his former work duties on a single day in November, apparently without bothering to inform anyone of the sudden improvement in his physical condition, there is no basis to conclude that he could have returned to work as a cable installer on a full-time basis, or that his employer could have reasonably required that he do so.

12

29, 2007. Daily reports for November 20, 2007,[8] and November 23, 2007, indicate that Mr. Farruggia was performing his duties without assistance. Further, the affidavit of a supervisor, Mr. Cantrell, introduced at trial, states that Mr. Farruggia had returned to work as a cable technician. Mr. Armstrong also testified that Mr. Farruggia was no longer accompanied by a trainee in late November and was performing the required work independently.

Moreover, this Court finds that the circuit court was correct in its assessment that the jury could have found, based upon the evidence submitted by Mr. Farruggia, that a prima facie case of discrimination had been established under West Virginia Code § 23-5A-1. Utilizing the standard of *Powell*, the court found that the evidence was sufficient to support a jury finding that Mr. Farruggia was injured, that a workers' compensation claim had been initiated, and that the claim was a "significant factor in the employer's decision to discharge or otherwise discriminate against the employee." *Powell*, 184 W.Va. 700, 701, 403 S.E.2d 717, 718, syl. pt. 1.

As this Court noted in syllabus point two of *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996):

---

[8]For example, Mr. Farruggia testified that he worked twelve hours on November 20, 2007, and lifted an eighty-pound fiberglass ladder and spools of cable. He specified that he did not have a trainee with him to assist and was capable of completing the work on his own.

> ""Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85 [, 163 S.E. 767 (1932) ].' Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250[, 100 S.E.2d 808](1957)." Syl. Pt. 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

Based upon the foregoing and considering the evidence in a light most favorable to Mr. Farruggia, this Court cannot conclude that the lower court erred in denying JWCF's motion for judgment as a matter of law.

## B. Denial of New Trial

Based upon similar reasoning, JWCF also contends that the circuit court erred in refusing its request for a new trial. JWCF argues that the jury verdict was contrary to the law, to the extent that JWCF contends that Mr. Farruggia never qualified for reinstatement to his former position and had not obtained a release from his treating physician. Mr. Farruggia responds by arguing that a sufficient link was established between his decision to accept a settlement of his workers' compensation claim and JWCF's decision to terminate him. JWCF introduced testimony to rebut Mr. Farruggia's evidence with a non-retaliatory reason for the discharge, particularly the absence of a medical release and the cessation of the need for supervisory work.

14

This Court has explained that a new trial should rarely be granted. In *Neely v. Belk Inc.*, 222 W.Va. 560, 668 S.E.2d 189 (2008), for instance, this Court analyzed the standards for reviewing determinations of motions for a new trial and observed as follows:

> Although subjecting the trial court's decision to review for an abuse of discretion, we also noted in *In re State Public Building Asbestos Litigation* that a new trial should rarely be granted and then granted only where it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. *In re State Public Building Asbestos Litigation*, 193 W.Va. at 124, 454 S.E.2d at 418 (quoting 11 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure 2803 at 32-33); *see also*, *Morrison v. Sharma*, 200 W.Va. 192, 194, 488 S.E.2d 467, 470 (1997).

*Neely*, 222 W.Va. at 566, 668 S.E.2d at 195. In evaluating this issue, this Court is "cognizant that in determining whether a valid claim has been established, the assessment of evidence and testimony is, of course, within the province of the trier of fact, and that we, as an appellate court, owe great deference to the verdict." *Hutchison v. City of Huntington*, 198 W. Va. 139, 157, 479 S.E.2d 649, 667 (1996). "Furthermore, we recognize that evidence is sufficient if a rational trier of fact could have found the essential elements of the claim by a preponderance of the evidence based on the evidence presented at trial." *Id.*

As discussed above with respect to the denial of judgment as a matter of law, Mr. Farruggia contends that he submitted sufficient evidence to support a jury verdict that he was no longer disabled. He emphasizes his corroborated testimony that he had returned to his former position and was no longer performing light-duty work. In light of that specific

15

evidence of the cessation of his disability, Mr. Farruggia contends that the absence of an actual medical release is irrelevant to the operation of the statute and the jury's findings. Moreover, Mr. Farruggia contends that the jury was well within its authority to conclude that he had been the victim of discrimination under West Virginia Code § 23-5A-1 and West Virginia Code § 23-5A-3(b), based upon the evidence introduced at trial. This Court finds that the verdict rendered by the jury is not against the clear weight of the evidence presented during the trial of this matter, and we find no error in the denial of a new trial.

### C. Sufficient Evidence to Warrant a Punitive Damage Instruction

JWCF also contends that the circuit court erred in "giving a punitive damages instruction and in allowing the issue of punitive damages to reach the jury. . . ." JWCF contends that Mr. Farruggia did not submit sufficient evidence of willful, wanton, or malicious behavior to justify such an instruction.

Mr. Farruggia responds by chronicling the evidence of actions by JWCF warranting a punitive damages instruction. He emphasizes, for instance, the evidence of a clear expression of employer hostility toward Mr. Farruggia's decision to accept a workers' compensation settlement. As noted above, Mr. Farruggia and lead technician, Jason Armstrong, both testified that Austin Cantrell stated that Mr. Farruggia was being terminated because of the workers' compensation settlement. Mr. Farruggia also argues the strength of evidence he introduced in the form of emails written by the JWCF benefits manager,

16

Cinnomin Yohe, that demonstrate the level of hostility toward Mr. Farruggia's settlement and Ms. Yohe's intent to retaliate against Mr. Farruggia by removing the potential for continued light duty work. Although Ms. Yohe did not testify, the claims handler, Ms Lyttle, testified that Ms. Yohe had informed her that "she was going to send an email to [representatives of Brickstreet] and ask if they could get the claimant in to sign the settlement before Friday and then they would address the lack of light duty available."

This Court premises the determination of whether sufficient evidence has been introduced to justify providing a punitive damage jury instruction on syllabus point four of *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895), and its progeny. In that syllabus point of *Mayer*, this Court held that, "[i]n actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." *Id*. The determination of whether punitive damages should even be considered is the first step in the evaluative process. As this Court noted in syllabus point six, in part, of *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 694 S.E.2d 815 (2010), "[w]hen this Court, or a trial court, reviews an award of punitive damages, the court must first evaluate whether the conduct of the defendant toward the plaintiff entitled the plaintiff to a punitive damage award under *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895), and its progeny. . . ."

17

In *Alkire v. First National Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996), this Court held that in order to recover punitive damages or to have a jury instructed on punitive damages, there must be evidence that the employer acted willfully, wantonly, maliciously, or recklessly.[9] "The foundation of an inference of malice is the general disregard of the rights of others, rather than an intent to injure a particular individual." *Addair v. Huffman*, 156 W.Va. 592, 603, 195 S.E.2d 739, 746 (1973).[10]

Upon examination of Mr. Farruggia's evidence during a charge conference, the parties discussed a punitive damage instruction with the circuit court, and the court thoroughly evaluated the evidence presented by Mr. Farruggia. Specifically, the circuit court explained that "we're talking about a threshold, if a jury could infer or find based on the evidence. . . . But my job right now would be to determine whether, based on the evidence that's come before me, could a jury based on what's been presented reasonably find or infer." After further discussion of the evidence introduced by Mr. Farruggia, the court stated: "My

---

[9]This Court has also observed, in *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982) (*Harless II*), that "[t]he mere existence of a retaliatory discharge will not automatically give rise to the right to punitive damages. The plaintiff must prove further egregious conduct on the part of the employer." *Id*. at 692-93, 289 S.E.2d at 703.

[10]JWCF does not challenge the $30,000 punitive damage award as excessive, asserting only that a punitive damage instruction should not have been given. Moreover, JWCF does not challenge the circuit court's assessment of the factors enumerated in *Garnes v. Fleming Landfill, Inc*., 186 W.Va. 656, 413 S.E.2d 897 (1991), in any manner, and this Court notes that the circuit court provided the jury with instructions regarding the requirements enumerated in *Garnes. See Id*. at 658-59, 413 S.E.2d at 899-900.

18

job is not to decide whether the evidence would support an award for punitives. That would be a jury's call." The court thereafter ruled that a punitive damage instruction would be provided to the jury.

Similarly, in the circuit court's denial of JWCF's motion for a new trial, the matter of entitlement to a punitive damages instruction was again specifically evaluated. The court explained as follows:

> The jury in this case heard uncontested evidence in the form of a party admission by the defendant's manager that the defendant unlawfully terminated the plaintiff because he took a workers' compensation settlement. The jury inspected emails from the defendant's benefits manager that were admitted into evidence, and which expressed displeasure with the plaintiff's workers' compensation settlement, including, "I am upset that BrickStreet has made a settlement offer to Steven Farruggia. . . ." and "please see if you can get him in the office to sign the settlement papers before we review the lack of light duty available at his regular meeting on Friday." (Exhibit number reference omitted). This evidence was uncontested. The Defendant's human resource employee, Cinnomin Yohe, the author of these emails, did not testify at trial.

Thus, the circuit court found sufficient evidence of willful, wanton, and malicious behavior to warrant submission of a punitive damage instruction to the jury.

This Court has consistently held the determination of whether a punitive damages jury instruction is appropriate is within the sound discretion of the trial judge. This Court has also clearly stated that "'[i]t will be presumed that a trial court acted correctly in

19

giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given.' Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952)." Syl. Pt. 1, *Moran v. Atha Trucking, Inc.*, 208 W.Va. 379, 540 S.E.2d 903 (1997).

Upon this Court's review of the evidence, we find no abuse of discretion by the circuit court in providing a punitive damages instruction to the jury. The circuit court evaluated the evidence introduced by Mr. Farruggia and determined that it justified an instruction on punitive damages. We find no reason to disturb the circuit court's finding on this issue.

### D. Evidence of Recent Employment of Mr. Farruggia

JWCF contends that the circuit court erred in refusing to exclude Mr. Farruggia's evidence of damages through the testimony of an expert economist, Mr. William Cobb, based upon Mr. Farruggia's late disclosure of the fact that he had recently been employed by Walmart. JWCF argues that such failure to timely supplement discovery with current wage information was sufficient to warrant the exclusion of the expert on economic damages.[11]

---

[11]According to evidence introduced at trial, Mr. Farruggia had obtained the job at
(continued...)

20

In response to the newly-disclosed evidence, the circuit court conducted an *in camera* hearing and provided the parties with approximately one-half day to address the ramifications of the new employment. Over the objection of JWCF, it was determined that Mr. Cobb would be permitted to offer an opinion on the degree to which the new Walmart employment altered his opinion of Mr. Farruggia's economic damages. Mr. Cobb ultimately determined, based upon an analysis of the fringe benefits available through Walmart, that his prior estimate of Mr. Farruggia's anticipated economic damages would be reduced by $142,208. Counsel for Mr. Farruggia therefore offered to reduce the requested damages by that amount, but counsel for JWCF declined that offer.

The circuit court denied JWCF's request for a continuance to allow additional time to prepare an economic analysis. The circuit court did, however, sanction counsel for Mr. Farruggia by requiring him to pay JWCF's economic expert's charges of approximately $1,800 for review of the new employment information.[12] "Unquestionably, the trial court possesses the inherent authority to impose sanctions for failure of a party to supplement

---

[11](...continued)
Walmart approximately three weeks prior to trial. Counsel for Mr. Farruggia had learned of this new employment on Saturday, September 11, 2010, but had failed to inform counsel for JWCF until Mr. Farruggia began to testify regarding his Walmart job during trial the following week.

[12]This civil action was fraught with discovery delays. The testimony of JWCF's economic expert, Mr. Gary Bennett, had been excluded prior to trial based upon JWCF's failure to timely provide a report regarding that expert's findings.

discovery as required by Rule 26(e) of the Rules of Civil Procedure." *McDougal v. McCammon*, 193 W.Va. 229, 238, 455 S.E.2d 788, 797 (1995). In syllabus point one of *McDougal*, this Court stated:

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

This Court has also explained that "one of the purposes of the discovery process under our Rules of Civil Procedure is to eliminate surprise. Trial by ambush is not contemplated by the Rules of Civil Procedure." *Id*. at 236-37, 455 S.E.2d at 795-96. However, a new trial is not necessarily the appropriate remedy in every instance. As this Court also stated in *McDougal*, "a new trial will not be granted unless the moving party was prejudiced. In order to prevail on appeal, the plaintiffs must show the admission [of the evidence at issue] was error under prevailing law and the failure to exclude the [evidence at issue] is inconsistent with substantial justice." *Id*. at 237, 455 S.E.2d at 796.

In syllabus point five of *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983), this Court enumerated factors to be considered in determining whether failure to supplement discovery should result in exclusion of evidence. These factors include: "(1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the

ability of the party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded." *Id.* at 786, 310 S.E.2d at 853.

In the present case, the revelation of Walmart employment was obviously a surprise to JWCF. The impact of the new evidence was significant, but it was remedied without significant difficulty based upon known financial data regarding fringe benefits to be earned by Mr. Farruggia at Walmart. There was no evidence of bad faith on the part of Mr. Farruggia, and the remedy offered by the circuit court included a sanction in the amount of an $1,800 payment by Mr. Farruggia's counsel and the reduction of Mr. Farruggia's damage claim by $142,208, an offer declined by JWCF. Based upon the facts surrounding this discovery issue, the circuit court found that JWCF suffered no actual prejudice emanating from the late disclosure of the Walmart employment. This Court affirms that decision.

E. Prior Favorable Treatment of Mr. Farruggia

JWCF also contends that the circuit court erred in excluding evidence of previous lenient treatment by JWCF toward Mr. Farruggia. Mr. Farruggia had been terminated in 2006 for refusing to take a drug test, and JWCF thereafter permitted him to return to work. Prior to trial, Mr. Farruggia's motion in limine to exclude any reference to evidence related to the drug issue had been granted, and the prohibition of use of such

evidence had again been discussed in a pretrial hearing. However, during trial, counsel for

JWCF sought permission to recall Mr. Farruggia for the purpose of soliciting testimony about

his prior employment with JWCF. Counsel for JWCF stated: "I simply want to say that Mr.

New [counsel for Mr. Farruggia] has painted my client as the wicked, nefarious . . .

corporation." She continued: "Mr. Farruggia, as you know, refused to take a drug test, and

I do not want to talk about that. That's a subject of a motion in limine. But I do want for him

to acknowledge that he was terminated for cause. . . ."

In response to this argument, counsel for Mr. Farruggia contended that even

if evidence of termination for cause could be introduced without reference to drug testing,

this would constitute inadmissible Rule 404(b) evidence and would be highly prejudicial to

Mr. Farruggia.[13] Based upon the prior motion in limine and an evaluation under the

balancing test set forth in Rule 403 of the West Virginia Rules of Evidence, the circuit court

determined that, although the evidence "would be for a legitimate purpose," the probative

---

[13]Rule 404(b) of the West Virginia Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show that he or she acted in conformity
therewith. It may, however, be admissible for other purposes, such as proof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident, provided that upon request by the accused,
the prosecution in a criminal case shall provide reasonable notice in
advance of trial, or during trial if the court excuses pretrial notice on good
cause shown, of the general nature of any such evidence it intends to
introduce at trial.

value of the evidence would be substantially outweighed by the danger of unfair prejudice to Mr. Farruggia. The court therefore excluded evidence regarding Mr. Farruggia's 2006 termination.[14]

This Court has consistently applied a deferential standard of review to trial court determinations of Rule 403 balancing issues. We have stated that "[a]s to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. pt. 10, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

The circuit court in this matter engaged in a thorough analysis of the evidence and properly determined that reference to Mr. Farruggia's prior termination for cause, even without the inclusion of details regarding the drug test refusal, would have been highly and unduly prejudicial to Mr. Farruggia. While the evidence of termination for cause would have

---

[14]This Court recognized the application of *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), for purposes of determining the admissibility of Rule 404(b) evidence in the civil context in *Stafford v. Rocky Hollow Coal Co.*, 198 W.Va. 593, 482 S.E.2d 210 (1996) (evaluating employee's wrongful discharge action against employer). The standards enunciated in *McGinnis* specifically require a Rule 403 balancing test, as accomplished by the circuit court. Rule 403 of the West Virginia Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

been probative on the issue of JWCF's claim of leniency toward Mr. Farruggia in the past, its probative value would have been substantially outweighed by the danger of unfair prejudice to Mr. Farruggia. This Court finds that the circuit court engaged in appropriate analysis of this issue and did not abuse its discretion in excluding the evidence.

### F. Evidence of Mr. Farruggia's Family Situation

JWCF also contends that evidence regarding the illness of Mr. Farruggia's sister-in-law and the accompanying family stress should not have been admitted and served only to evoke jury sympathy toward Mr. Farruggia.[15] Mr. Farruggia responds to JWCF's contentions by emphasizing that JWCF failed to object to the introduction of such evidence. Mr. Farruggia therefore contends that JWCF waived any error. This Court agrees.[16] The alleged error was not preserved based upon the failure to object to the introduction of the evidence. *See Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W.Va. 318, 547 S.E.2d 256 (2001). As this Court stated in *Lowe v. National Micrographics Systems of*

---

[15]While the circuit court initially ruled that evidence regarding emotional distress would not be admissible, Mr. Farruggia was later permitted to testify regarding the illness within the family.

[16]While JWCF's failure to object to this evidence has resulted in waiver, we wish to comment on the trial judge's analysis of whether improper sympathy evidence was injected into the trial. The trial judge reasoned as follows: "Had the jury's award for aggravation, annoyance and inconvenience been for millions of dollars, the defendant's arguments may hold some weight. However, in light of a fifteen thousand dollar ($15,000.00) award . . ., the Court finds Defendant's argument unpersuasive and denies same." The trial court's suggestion that the issue of prejudice is to be determined by corollary reference to the damage award is judicially unsound.

*West Virginia, Inc.*, 183 W.Va. 162, 394 S.E.2d 761 (1990), "[i]t is axiomatic that '[o]bjections to the introduction of evidence not made in the trial court cannot be raised or considered in the appellate court.' *Korzun v. Shahan*, 151 W.Va. 243, 253, 151 S.E.2d 287, 294 (1966)." *Id.* at 164, 394 S.E.2d at 763.[17]


IV.  Conclusion

Based upon the foregoing analysis, this Court affirms the judgment of the Circuit Court of Kanawha County.


Affirmed.

---

[17]JWCF's final assignment of error asserts the cumulative effect of previously-enunciated errors and alleges that the jury was thereby unable to gain an accurate understanding of the employment relationship.  We find no merit in this argument and are unpersuaded by it.